Vance V. ALLEN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20955.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 10, 1967.

Decided Jan. 25, 1968.

Mr. Richard H. Speidel, Washington, D. C. (appointed by this court), for appellant.

Mr. Albert W. Overby, Jr., Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and John H. Treanor, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

Following a jury conviction, appellant was given concurrent sentences of one to three years for unauthorized use of a motor vehicle, and six months for simple assault. Both sentences were suspended, and appellant was placed on probation for three years. We hold the cause must be remanded for the trial judge to consider whether prejudice resulted from the denial to appellant's counsel of access to the grand jury testimony of the arresting police officer, Vincent Tassa, Jr.

The Government's case rested heavily on Tassa's testimony. Apart from witnesses who established that appellant lacked permission of the lawful owner to use the vehicle, the only other government witness was one Earvel Jeffries, a passenger in the car at the time appellant was apprehended and the alleged victim of the assault. However, Jeffries could give little testimony as to the critical period—it developed that he was intoxicated and that he "blacks out" when suffering from that condition—and indeed he testified that he did not remember either ever having seen appellant previously, or having been in a car or talked to police officers.

Officer Tassa testified[1] that shortly after 3:30 a. m. on the morning of December 27, 1965, his attention was drawn to a Chevrolet station wagon being driven at an extremely slow speed with headlights off. Tassa followed the car, which moved slowly into an alley. The officer activated the flashing beacon atop his squad car and beeped his horn, whereupon the car was stopped. He approached the car, intending to issue a traffic citation for night driving without headlights.

Officer Tassa's testimony continued: He came up to the halted vehicle from the driver's side and asked the driver, appellant, to produce his driver's permit and automobile registration. He noticed that there was another man (Jeffries) slumped over in the right rear seat, whose "face was beyond recognition," bleeding profusely about the head. Appellant said he did not have a permit or registration.[2] Tassa asked appellant

1. For convenience, Tassa's testimony as related herein includes not only what he said at trial but the additional detail in his pre-trial testimony.

2. When defense counsel asked whether at this point appellant "was free to go," the officer said, "no," because, in addition to the traffic violation, the driver lacked a registration and permit so that the officer now wanted to check on ownership, to see if the man in the back seat had the registration.

who owned the car, where it came from, where he had gotten it. To all of these questions appellant replied that he did not know. The officer asked appellant to step out and walk around to the right side of the car. Appellant did so. Tassa then asked Jeffries (still slumped in the back seat) whether the car was his, but the reply was mumbled and unintelligible.[3] He asked Jeffries whether he had been beaten, and if so, by whom. Once again the response was an unintelligible mumble, but this time it was accompanied by a gesture—Jeffries raised his hand and pointed to appellant. The officer knew that Jeffries had been drinking. He turned to appellant and asked whether he had beaten Jeffries. Appellant said he had. The officer directed his flashlight on appellant's hands and saw that appellant's right hand knuckles were skinned enough so that he could see the blood work through the skin. Tassa then called police headquarters and learned from the dispatcher that the automobile had been reported as stolen. Tassa asked appellant if the car was stolen, and appellant replied he did not know. The officer then radioed for help and arrested both appellant and Jeffries.

A wholly different account was set forth in appellant's testimony, which went as follows: Appellant met Jeffries on the evening of December 26, and Jeffries told him that he had been beaten and robbed by "some boys." Jeffries said he was too drunk to drive, offered appellant some money to drive him home and led appellant to the station wagon. Appellant turned on the ignition—without a key, which Jeffries said had been taken—and started off, proceeding first to the home of appellant's sister-in-law, where he dropped off a 15-year old friend (who broadly corroborated appellant's testimony). Appellant further testified: He did not know he was driving a stolen car; he did not assault Jeffries, and

had not told officer Tassa that he had; and his knuckles were not bleeding.

Both before the paneling of the jury and during the trial appellant's appointed counsel moved the trial judge *inter alia* for the production of officer Tassa's grand jury testimony and for suppression of the alleged oral confession allegedly given to Tassa at the scene of the apprehension. Both motions were denied both times. Appellant assails each ruling as reversible error.

## I. THE ADMISSION

Appellant contends the court erred in admitting officer Tassa's testimony that appellant admitted beating Jeffries, because Tassa had admittedly not previously given appellant the warnings set forth in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If the contention is sound, it requires reversal of the judgment. We think it is not sound.

In *Miranda* the Supreme Court held that unless procedural safeguards of warnings were provided the prosecution could not use statements "stemming from custodial interrogation." See 384 U.S. at 444, 86 S.Ct. at 1612.

> By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

In the footnote appended to this sentence the Court said: "This is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused."

Whether police have left the channel of "investigation" and run onto the shoals of "custodial interrogation" cannot be determined by reference to some chart clearly designating the various lights, bells, buoys and other chan-

---

3. Defense counsel asked whether the officer, having observed a bleeding man, appellant was free to go. The officer replied, "no," since he was investigating the ownership of the car. It be-

came Tassa's duty under routine police procedures to call headquarters and get a "stolen check," presumably because neither of the occupants showed proof of ownership.

nel markers. Nor is it possible or desirable to simplify the matter by saying that whenever any officer is prepared to detain an individual he may not ask any questions. Such a rule would venerate form over the substance of sound relations between police and citizens in a large community. We think the relative routineness of an inquiry is a material indicator that the police are still in a state of investigation. The police talk to too many people in the course of a day to make warnings compulsory every time they inquire into a situation. Such a requirement would hamper and perhaps demean routine police investigation. Indeed excessive admonitions are likely to make cooperative and law-abiding citizens anxious and fearful out of proportion to the need for admonitions in advising prime suspects of their rights.

*Miranda* specifically permits general on-the-street investigation of citizens not under restraint (384 U.S. at 477–778, 86 S.Ct. at 1629–1630). But obviously citizens are subject to some detention even in that kind of investigation. We think some inquiry can be made as part of an investigation notwithstanding limited and brief restraints by the police in their effort to screen crimes from relatively routine mishaps. It is not uncommon for citizens to forget their permits and registration cards. That this mishap produces incidental detention and restraint while the possibility of a stolen car is checked out, perhaps so brief as to be virtually unappreciated by the person involved,[4] does not produce the kind of custodial situation contemplated by the *Miranda* doctrine.

The question as to the assault on Jeffries is more difficult. Appellant's counsel artfully dramatizes the situation by saying that Jeffries had already literally pointed the finger at appellant. In context, however, what we see is an officer taking account of a bleeding man. He asks, who beat you?—and gets only a mumble, for the man is drunk. The officer could not know what the beaten man was trying to indicate, or whether he was in a position to make or report any observation. What did the man mean by his finger—that appellant hit him? That appellant knew who did? The police officer thought it was unusual that a man was lying on the right rear seat. But what did it mean? Was the driver taking the man for a hostile ride? Or to the hospital? An assault is a misdemeanor, and not every fracas is an assault. The courts must look to the essence of the situation and it seems to us clear that the essence here was not an officer staging an interrogation that had focused on a subject but an officer reacting to a street scene and trying to run down the facts. There were two men before him, one reflecting signs of a possible assault, and he asked first one and then the other, what happened? We think that when the officer asked appellant if he had beaten Jeffries, he had not yet made a determination to arrest for assault but was rather engaged in sorting out the facts in a type of street investigation. *Miranda* did not require the officer to preface with the several warnings therein outlined the questions put to this appellant.

## II. ACCESS TO OFFICER'S GRAND JURY TESTIMONY

In the pre-trial motion for the production of officer Tassa's grand jury testimony appellant's counsel said he anticipated that Officer Tassa would be called to testify that defendant made certain incriminating statements. The motion,

4. The fact that the police have not announced the existence of the restraints they would impose if the person sought to leave cuts two ways: If the premise is that custodial interrogation has begun, it may indicate that the police have not alerted the suspect to his rights. But it may also indicate that the line between investigation and custodial interrogation has not been crossed because the man involved is not under the special psychological disabilities of someone who knows he's been arrested, and responds to questions as a means of placating his captor.

then denied, was renewed at the close of the government's case. Appellant asserted that there was an inconsistency in the officer's testimony and also that the defendant would take the stand and deny outright the accuracy of the officer's account of the occurrences. Appellant contended that production was required under the guidelines of Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). The court denied the renewed motion on the ground that appellant had not demonstrated a "particularized need."

On this appeal the parties urge different interpretations of the *Dennis* case. The government contends that *Dennis* involved nothing more than the application of the established "particularized need" test of Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), to the facts before the Court. Appellant on the other hand directs our attention to the more sweeping language of *Dennis* and to the authorities,[5] referred to in that opinion, which call for abandonment in one context or another of the time honored rule of grand jury secrecy. In our view, appellant's position comes closer to the mark.

In *Dennis*, the Supreme Court took pains to note that access by the criminal defendant to critical information possessed by the government has been the object of mounting concern by those involved with the administration of justice.[6] Underlying *Dennis* and central to its meaning is the Court's basic premise that (384 U.S. at 873, 86 S.Ct. at 1851):

> In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most

compelling considerations. [Footnotes omitted.]

The narrower question in *Dennis* and in the case at bar, however, is whether the "clearest and most compelling considerations" dictate that the grand jury testimony of a trial witness, in contradistinction to other evidence the government might have, be kept from the defendant. The Court looked to the legitimate reasons supporting the curtain of secrecy which the grand jury has traditionally enjoyed. Reference was made[7] to the catalogue of reasons for secrecy assembled by Justice Brennan in his dissenting opinion, in which three other Justices joined, in Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 405, 79 S.Ct. 1237, 1244 (1959):

> (1) To prevent the accused from escaping before he is indicted and arrested or from tampering with the witnesses against him.
>
> (2) To prevent disclosure of derogatory information presented to the grand jury against an accused who has not been indicted.
>
> (3) To encourage complainants and witnesses to come before the grand jury and speak freely without fear that their testimony will be made public thereby subjecting them to possible discomfort or retaliation.
>
> (4) To encourage the grand jurors to engage in uninhibited investigation and deliberation by barring disclosure of their votes and comments during the proceedings.[8]

[5] Grand jury secrecy which promotes these objectives has merit as furthering the vigorous functioning of that historic institution. Conversely, in the absence of such reasons for secrecy in an individual case, the mere fact that a witness' prior testimony was given to grand jurors is not a clear and compelling rea-

---

5. Calkins, Grand Jury Secrecy, 63 Mich. L.Rev. 455 (1965); Sherry, Grand Jury Minutes: The Unreasonable Rule of Secrecy, 48 Va.L.Rev. 668 (1962).

6. See Dennis, 384 U.S. at 871 nn. 16, 17, 86 S.Ct. 1840.

7. 384 U.S. at 872 n. 18, 86 S.Ct. 1840.

8. Additional reasons, equally inapplicable in the instant case, have been proffered for grand jury secrecy. See Comment, 1967 Duke L.J. 97, 103 n. 24.

son to immunize it from later scrutiny after he has given testimony on the same subject at trial. The Court made it clear in *Dennis* that when the request for disclosure is made by a criminal defendant who has already been indicted and when the request is for the prior testimony of a witness who has already testified at trial, "none of the reasons traditionally advanced to justify non-disclosure of grand jury minutes * * * are significant." Dennis v. United States, 384 U.S. at 872 n. 18, 86 S.Ct. at 1850.[9]

The Government apparently argues that "particularized need" is required to be shown, even though it has not put forward any reasons for keeping secret a witness' prior testimony. In support of this position, it points to the references in *Dennis* to the earlier Supreme Court cases laying down the test of "particularized need."[10] The references in the *Dennis* opinion to the "particularized need" precedents make clear that they are of limited value in defining the present state of the law. In one context, these earlier cases were narrowly viewed as limited to their particular facts.[11] In another, more important context, they were cited for the principle not of secrecy but of disclosure,—as examples of cases in which the "Court has confirmed the trial court's power under Rule 6(e) of the Federal Rules of Criminal Procedure to direct disclosure of grand jury testimony * * *."[12] After reviewing these authorities, the Court went on to summarize its approach by saying:

> These developments are entirely consonant with the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice. This realization is reflected in the enactment of the so-called Jencks Act, * * * responding to this Court's decision in Jencks v. United States, 353 U.S. 657, [77 S.Ct. 1007, 1 L.Ed.2d 1103], which makes available to the defense a trial witness' pretrial statements insofar as they relate to his trial testimony. It is also reflected in the expanding body of materials, judicial and otherwise, favoring disclosure in criminal cases analogous to the civil practice. [Footnotes and citations omitted.]

We cannot agree with the Government that *Dennis* involved the mere application of existing rules requiring a showing of particularized need.[13]

■ We do not hold that the production of a witness' grand jury testimony should be compelled in every case upon a mere request. Disclosure in a particular case might undercut valid reasons for secrecy. Certainly the interest of secrecy may reasonably lead the judge to deny disclosure until the witness has testified at trial. Another circuit has held, in the exercise of its supervisory

---

9. *See* Pittsburgh Plate Glass Co. v. United States, 360 U.S. at 405–407, 79 S.Ct. 1237 (dissenting opinion); United States v. Youngblood, 379 F.2d 365, 370 n. 3 (2d Cir. 1967); Calkins, *supra* note 5, at 458–460, 476–484; Sherry, *supra* note 5.

10. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, (1940); United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1079 (1958); Pittsburgh Plate Glass Co. v. United States, *supra*.

11. The Court suggested that United States v. Procter & Gamble Co., *supra*, involved "pretrial disclosure of an entire grand jury transcript where the sole basis for discovery was that the transcript had been available to the Government in preparation of its case." 384 U.S. at 869, 86

S.Ct. at 1849. Pittsburgh Plate Glass Co. v. United States, *supra*, was explained as a "refusal to order disclosure of a witness' grand jury testimony where the defense made no showing of need, but insisted upon production of the minutes as a matter of right, and where there was 'overwhelming' proof of the offense charged without reference to the witness' trial testimony." *Id.*

12. 384 U.S. at 869–870, 86 S.Ct. at 1849.

13. *Compare* United States v. Youngblood, 379 F.2d 365 (2d Cir.1967), *and* United States v. Westmoreland, 41 F.R.D. 419 (S.D. Ind.1967), *with* Osborne v. United States, 371 F.2d 913 (9th Cir. 1967), *and* United States v. National Dairy Prods. Corp., 262 F.Supp. 447 (W.D.Mo. 1967).

power over administration, that once the witness has testified his grand jury testimony should be made available automatically, subject to limited motions for protective orders.[14] Since such production might involve at least delay at trial we do not require production where there is no semblance of need. But we think the threshold requirement to show need should not be stretched to a requirement to show "particularized need,"—a term of art that may serve to obstruct useful discovery.

In *Dennis*, the Court enumerated several "circumstances" which went "substantially beyond the minimum required" to demonstrate some need for disclosure, including: The testimony given before the grand jury was substantially fresher than that given at trial. The persons whose grand jury testimony was sought were key witnesses at trial. The determination of guilt or innocence turned on the accuracy of the testimony of the key witnesses. The witnesses involved had reasons for hostility toward petitioners. Finally, upon cross-examination, it developed that one witness professed that he had made material mistakes in earlier testimony. These factors going "substantially beyond the minimum required" are not all indispensable to a showing of

need. Nor does this list exhaust the relevant considerations.[15]

■■ In the case at bar, we are concerned with a police officer testifying to a reported oral confession. For such a witness it is difficult to see a valid reason for secrecy, and we announce a "per se" rule that a defendant has the requisite "need" for the grand jury testimony of a police officer who testifies in relation to a confession.[16] This of course does not necessarily require that his testimony, or all of it, be revealed if the Government, on appropriate application, shows need for a protective order.[17]

■ However, we do not think it is in the interest of justice to hold that this automatically constituted reversible error in rulings of the district court prior to the issuance of this opinion. Accordingly, we remand this case to the trial court for a hearing on the question of prejudice. At the hearing the court will itself inspect the officer's grand jury testimony, and of course, will allow the appellant to do the same. If it develops that due to inconsistencies there is a reasonable possibility that the statement could have been effectively utilized by the defense, a new trial should be had.[18]

So ordered.

14. United States v. Youngblood, 379 F.2d 365, 370 (2d Cir. 1967).

15. For other factors, see, e.g., Worthy v. United States, 127 U.S.App.D.C. 329 383 F.2d 524 (1967); Simmons v. United States, 113 U.S.App.D.C. 369, 308 F.2d 324 (1962); Gordan v. United States, 112 U.S.App.D.C. 33, 299 F.2d 117 (1962), cert. denied, 374 U.S. 839, 83 S.Ct. 1890, 10 L.Ed.2d 1060 (1963); DeBinder v. United States, 110 U.S.App.D.C. 244, 292 F.2d 737 (1961).

16. Indeed, unless the prosecutor represents that there is substantial doubt whether the officer will testify at trial, we see no good reason why the grand jury testimony should not be available through a pre-trial motion. The defendant could obtain the pertinent grand jury minutes before trial by filing a motion to suppress the confession, since our *per se* rule would then make the minutes available as soon as the officer testifies at

the pre-trial hearing. In the less usual case of a witness to a confession who is not a police officer there may be more reason to defer production, because of fear of tampering, and desire to encourage witnesses to testify before the grand jury. Moreover, rarely if ever would there be a basis for a pre-trial motion to suppress a confession made to a private citizen.

17. *See* note 14 *supra*. We do not pass on the question that may arise as to such portion of the officer's testimony to the grand jury as may consist of a hearsay account of what was told him by others. *cf*. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), who have not yet been called to testify at the trial.

18. *See* Worthy v. United States, *supra* note 15; Duncan v. United States, 126 U.S.App.D.C. 371, 379 F.2d 148 (1967).

TAMM, Circuit Judge (concurring in part and dissenting in part):

I concur in the remand of the case for a determination of whether the defendant was prejudiced by the trial court's refusal to allow inspection of the grand jury minutes. As I understand the teaching of Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), there must be shown by defense counsel some specific need or purpose before the court is required to permit examination of the grand jury minutes. The need shown here was an inconsistency between a summary of the arresting officer's grand jury testimony and his testimony at a preliminary hearing and the trial. Both the hearing and the trial testimonies showed defendant's admission (of beating and robbing Jeffries) as coming *before* the stolen vehicle check was made, but the grand jury summary showed it as coming *after* the check was made.[1] Although it is a close question, I feel that on these facts the defendant made out the requisite need under *Dennis*.

I do not join the majority's announcement of a "per se" rule—that in all cases involving police testimony about an oral confession the defendant shall have the right to inspect the grand jury minutes without being required to show a need for them. By eliminating the previous requirement that a need be shown, the rule will unnecessarily delay trial of the many criminal cases in which *no need* is present for allowing inspection. The Jencks Act grants defendants a right to discover the statements of prosecution witnesses[2] and thus provides a strong tool for developing need. With such a tool available, it hardly seems unfair to require that a specific need for the grand jury minutes be demonstrated. I, accordingly, respectfully dissent from this portion of the majority opinion.

---

1. The sequence was important because the trial judge ruled that under Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the defendant's incriminating statements with respect to the unauthorized use charge would be admissible if made before the officer learned the car was stolen. While the admission went to the assault charge, it was also relevant to the unauthorized use charge because it tended to negate defendant's alibi—that Jeffries had asked defendant to drive him home in his (Jeffries') car.

The summary set out the events: A, B, C, D, but *not*: A occurred, then B occurred, then C occurred, etc. Record at 132. While this caused the trial judge to feel that the summary did not purport to state the events in the order in which they occurred, there is at least an implication that it did purport to so state them.

2. Although grand jury minutes are excluded from its operation, Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 398, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), the Act provides, *inter alia*: "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b) (1964). See Reichert v. United States, 123 U.S.App. D.C. 294, 297, 359 F.2d 278, 281 n. 5 (1966).