**UNITED STATES of America,
Appellee,**

v.

**Michael Angelo DIAZ, Defendant,
Appellant.**

**No. 7505.**

United States Court of Appeals,
First Circuit.

Heard April 6, 1970.

Decided June 8, 1970.

Robert Upton, II and Charles G. Douglas, III, Manchester, N. H., by appointment of the Court, for appellant.

William B. Cullimore, Asst. U. S. Atty., with whom David A. Brock, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, COFFIN, Circuit Judge, and FORD, District Judge.

COFFIN, Circuit Judge.

Shortly before midnight on July 3, 1969, Sergeant Foisy of the New Hampshire State Police, on routine patrol through the town of West Ossipee with another patrolman, observed defendant Michael Diaz hitchhiking by the side of the road, a misdemeanor under New Hampshire law. N.H.R.S.A. 262–A:38. The officers stopped their car, called defendant over, and, after inquiring of his destination, Sergeant Foisy asked defendant for some identification. After defendant produced a Social Security card and a New York birth certificate —neither of which contain a recent description of the named person or his current address—Sergeant Foisy asked to see his draft card. Defendant replied that he had sent it to Florida for a change of address. Defendant was then arrested for the hitchhiking violation and taken to the Carroll County Jail. Sometime later, defendant apparently admitted orally that he had no draft card and had never registered for the draft.

On July 9, Sergeant Foisy and another State Trooper took defendant to the local draft board in Center Ossipee, to give him an opportunity to register for the draft. When defendant refused, he was informed by the board secretary of the consequences of his refusal and eventually asked for an explanation of his objections to registration. He made a short written statement, followed a few days later by a longer letter. Soon thereafter, defendant was arrested and indicted for failure to register for the draft and for failure to have a draft card in his possession.

It is undisputed that defendant was not given any *Miranda* warnings either before being asked to show his draft card or at the local draft board. At his non-jury trial, replies from all 56 of the State and Territorial Selective Service Headquarters—each indicating that defendant had not registered within its jurisdiction—were introduced into evidence, as well as defendant's first written statement and the testimony of the local board secretary. On this evidence, defendant was convicted for failure to register for the draft, the lesser "lack of possession" charge having been dismissed during trial. Defendant brings this appeal.

■ Defendant contends initially that his arrest for the hitchhiking violation was simply a pretext for interrogation concerning possible Selective Service violations, making inadmissible all of the evidence attributable to such unlawful arrest, Wong Sun v. United States, 371 U.S. 471, 485–486, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963). However, defendant never presented this objection to the district court during the proceeding below, as required by Rule 51, F.R.Crim.P. *E. g.,* United States v. Gilchrist, 347 F.2d 715 (2d Cir. 1965); United States v. Frazier, 385 F.2d 901, 904 (6th Cir. 1967). As far as Rule 52(b) is concerned, it was certainly not "plain error" for the district court in this case to admit the evidence of the ensuing events without first *sua sponte* considering the legality of the arrest. When the officers stopped defendant for the hitchhiking violation, they had no reason to suspect that he was guilty of any other offense. *Compare* State of Oregon v. Williams, 248 Or. 85, 432 P.2d 679 (Or.1967). Moreover, there was no suggestion of a working relationship between the local and federal officers which might vitiate the arrest. *See* United States v. Frazier, *supra,* 385 F.2d at 904. In these circumstances defendant may not raise on appeal an objection which was not presented to the district court.

■ Defendant's second contention is that Sergeant Foisy was required to warn him of his constitutional rights before asking to see his draft card, since lack of possession thereof is itself unlawful. 50 U.S.C. App. § 462 (Supp. IV 1968); 32 C.F.R. § 1617.1 (1969). We agree that there are circumstances in which an officer must advise a person of his constitutional rights before inquiring into his compliance with the Selective Service

laws. *See* text *infra*. However, whether or not defendant had been formally arrested at the time Sergeant Foisy asked to see his draft card, it is clear that the question was asked simply as a means of establishing identification, which had not been sufficiently established by defendant's birth certificate or Social Security card. *Compare* United States v. Nowling, 25 CMR 362 (1958). It was only when defendant claimed to have sent his card to Florida that Sergeant Foisy began to suspect a violation. We conclude that *Miranda* warnings need not be given when the sole purpose of the on-the-scene questioning is a good faith attempt to determine the identity of a person whom the police have reason to question. *See* Lowe v. United States, 407 F.2d 1391 (9th Cir. 1969); Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476, 478–479 (1968), supplemented in 131 U.S.App.D.C. 358, 404 F.2d 1335 (1968); United States v. Gibson, 392 F.2d 373 (4th Cir. 1968); Sciberras v. United States, 380 F.2d 732, 734 (10th Cir. 1967).

■ Defendant's third objection is that the failure to advise him of his constitutional rights when he was taken to the local draft board in Center Ossipee on July 9 renders inadmissible both his written statement made at that time and the testimony of the board secretary concerning his refusal to register. We agree. At that point he had obviously told the officers of his refusal to register, he was the focus of their attention because of that refusal, and he was in their custody and under arrest (for the hitchhiking violation) throughout his conversation with the board secretary. These circumstances seem to us to bring defendant within the holding that

"when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning,"

the authorities are required to advise him of his constitutional rights; failure to do so prevents the fruits of such questioning from being used against the individual. Miranda v. Arizona, 384 U.S. 436, 444, 478–479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

The government directs our attention to a number of cases holding that *Miranda* warnings or related protections need not be given to a person appearing before a draft board with regard to registration or classification.[1] We do not question either that general proposition or the government's contention that the board secretary is not a law enforcement officer. However, the timing and necessity of *Miranda* warnings does not depend simply on who actually does the questioning or where the questioning takes place. In none of the cases cited to us was the defendant brought to the draft board under arrest,[2] in police custody, and, as a suspected draft evader, questioned about his refusal to register with the draft as the law requires. The remote possibility that defendant's refusal to register at the Center Ossipee draft board that day might not have matured into an indictment for such refusal does not vitiate the necessity of adequate warnings. Mathis v. United States, 391 U.S. 1, 4, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). In these circumstances, "custodial interrogation" exists, and the fact that a person who also performs routine procedural tasks for an administrative agency does the questioning rather than

1. United States v. Kroll, 402 F.2d 221 (3d Cir. 1968); United States v. Dicks, 392 F.2d 524 (4th Cir. 1968); Camp v. United States, 413 F.2d 419 (5th Cir. 1969); United States v. Holmes, 387 F.2d 781 (7th Cir. 1968); Haven v. United States, 403 F.2d 384 (9th Cir. 1968).

2. Mathis v. United States, 391 U.S. 1, 4, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), makes clear that the fact that the crime for which defendant is under arrest and in custody is different from the crime about which he is questioned is of no consequence in the determination of whether there is "custodial interrogation" requiring warnings.

the policemen standing nearby does not alter the coercive atmosphere surrounding the questioning.

We stress that we do not criticize the government practice which affords the non-registrant an opportunity to avoid criminal indictment by late registration. Moreover, it appears that both Sergeant Foisy and the board secretary acted in good faith and out of some concern for defendant's well-being. Yet the fairness of the government practice ceases when statements procured in the circumstances described above are introduced against the defendant in a subsequent proceeding. We therefore hold that it was error to admit defendant's written statement at the draft board and the testimony of the board secretary.

■ Our question now becomes whether the evidence of the 56 letters stating that defendant had not registered within each jurisdiction was admissible. Defendant's only objection on appeal to the 56 letters is that they are the "fruit" of the improper interrogation at the local draft board. However, the government had good reason and sufficient information to obtain the 56 letters immediately after defendant was arrested, when defendant produced some identification but failed to produce his draft card and offered an improbable excuse for his failure. The only apparent reason that the requests to the other draft headquarters were not sent immediately —if indeed they were not—was to provide the defendant with an opportunity to register late and avoid prosecution. When the defendant rejected that opportunity, the government proceeded to make its case against him, on the basis of facts known to it before the July 9 meeting at the local draft board. The fact that there may have been a later tainted source for the 56 letters does not require their exclusion, because here there was an earlier and "independent" untainted source. Wong Sun v. United States, *supra*, 371 U.S. at 485, 83 S.Ct. 407.

■ Since the 56 letters were properly admitted, our question is whether the admission of defendant's written statement and the board secretary's testimony constitutes "harmless error beyond a reasonable doubt" within the meaning of Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The case was tried without a jury; the letters taken in conjunction with defendant's failure to have a card in his possession, constitute overwhelming proof that defendant had not registered. Defendant's conviction is sustained despite the improper admission of some evidence. *See* Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

■ Defendant's final contention is that the Selective Service Act is an unconstitutional interference with his "right to life" guaranteed by the Ninth Amendment. Whatever may be said for the historical—*see* Friedman, Conscription and the Constitution: The Original Understanding, 67 Mich.L.Rev. 1493 (1969)—and social merit of defendant's contention, we feel compelled to follow existing Court precedent upholding the constitutionality of Congressional conscription. Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918); United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

Affirmed.