Kenneth Jordan BROWN, Petitioner,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.

Civ. A. No. 70-H-79.

United States District Court,
S. D. Texas,
Houston Division.

Dec. 17, 1971.

Briscoe, Dally & Shaffer (Joe C. Shaffer), Houston, Tex., for petitioner.

Glenn R. Brown, Asst. Atty. Gen. of Tex., Austin, Tex., for respondent.

MEMORANDUM AND ORDER

SEALS, District Judge.

This case is presently before the Court on remand from the United States Court of Appeals for the Fifth Circuit, 439 F.2d 259 (C.A.5, 1971), for determination of an issue not previously considered by the Court. Petitioner is an inmate in the custody of the Texas Department of Corrections by virtue of a conviction for possession of heroin, for which he was sentenced to 99 years imprisonment on September 14, 1967. Conviction was affirmed by the Court of Criminal Appeals on March 20, 1968, 437 S.W.2d 838 (Tex.Cr.App.1968). Petition for writ of certiorari to the United States Supreme Court was denied on February 24, 1969, Justice Douglas dissenting, 393 U.S. 1089, 89 S.Ct. 850, 21 L.Ed.2d 782 (1969).

Petitioner next sought habeas corpus relief in the courts of Texas and, failing there, he applied to this court in early 1970. On July 30, 1970, the Court denied that aspect of Petitioner's application which asserted that the heroin seized at the time of his arrest was inadmissible into evidence because the affidavits supporting the issuance of the search warrant were insufficient to establish probable cause. That portion of Petitioner's case was affirmed by the Court of Appeals on March 1, 1971.

Petitioner's sole remaining contention is based upon the admissibility at his State trial of his response to a question posed immediately before his arrest by one of the investigating officers. There is here no material dispute with regard to the events which transpired. The difficulty arises from the parties' differing interpretations of the legal effect of these events.

At approximately 9:15 P. M. on the evening of March 11, 1966, nine Houston Police Officers, carrying a search warrant and firearms, entered a drug store of which Petitioner was at least the manager.[1] Petitioner was summoned from the back of the store, where he had been lying down, and the officers began their search. After searching the store for a period of 30 to 45 minutes, one of the officers located under the base of the display counter a brown paper sack containing two plastic bags. The plastic bags held a brown powder subsequently identified as heroin. An officer then exhibited one of the bags to Petitioner and asked him "What is this?" or "What's in the sack?"[2] To this query Petitioner replied, "It's heroin. You have got me this time." Around those eight words center the dispute between Petitioner and the State of Texas.

Petitioner contends that admission of this "confession" at his State trial constitutes a violation of his Fifth, Sixth and Fourteenth Amendment rights, since the "confession" occurred in response to an interrogation made prior to his being advised of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1965). Respondent argues

that Petitioner was not in custody at the time he made his incriminating statement; that Petitioner's response was not the result of an interrogation; and finally, that the statement constitutes res gestae, a type of admission to which, in Texas, *Miranda* has been held not to apply.

At the State trial, Judge Miron Love first found not only that Petitioner was in custody at the time of the "confession," but that he was even under arrest. As a result, Judge Love sustained Petitioner's objection to the introduction of the incriminating statement. Although the record does not indicate that Judge Love ever amended this finding, the statement was subsequently introduced. The most reasonable explanation seems to be that Judge Love admitted the statement as res gestae.

The Court of Criminal Appeals found that Petitioner was not under arrest at the time he made his incriminating statement, but upheld the statement's admissibility on the additional ground that it constitutes res gestae. *Brown*, supra, 437 S.W.2d at 829, 830.

■ Rather than restrict its application to persons "under arrest," *Miranda* imposes its requirements upon all those "in custody." "Custody" is without doubt a broader term than "arrest," and the Court is convinced that the totality of circumstances in this case compel a finding that Petitioner was "in custody" at the time of his "confession."

A recent decision of the Court of Appeals for the Fifth Circuit supports this view. In United States v. Phelps, 443 F.2d 246 (C.A.5, 1971), the Court sum-

---

1. The State trial record does not show that Petitioner owned or leased the premises. It does show that the Liquor License was issued in the name of Kenneth Bruce Brown. The question of ownership of the store assumes significance if Brown's "confession" is held inadmissible, for the State will then be obliged to prove Petitioner's relationship to the heroin.

2. Officer C. R. Dunlap testified in this Court on October 25, 1971, that Officer Kerns "turned towards him [Petitioner] and held it [the sack] up," and then asked the question. From this testimony, we may conclude that the officer was addressing his inquiry specifically to Petitioner, and in a manner unequivocally designed to convey to Petitioner the impression that the officer was referring to the sack.

marized the current state of *Miranda* law:

> "* * * it is now certain that the mere fact that interrogation takes place in the familiar surroundings of the defendant's home or place of business rather than in the police station does not necessarily mean the defendant is not being subjected to custodial interrogation. * * * Nor must the defendant be under formal arrest prior to the interrogation in order for *Miranda* rights to arise. * * * On the positive side, we have noted several significant factors which should be considered in determining whether or not a defendant is in custody. For example, probable cause to arrest, subjective intent of the police, focus of the investigation, and subjective belief of the defendant have all been deemed relevant. * * * *However, throughout the decisions one of these factors has consistently impressed our court: whether or not the focus of the investigation has finally centered on the defendant.* [emphasis supplied] *Phelps*, at 247.

When these standards are applied to Petitioner's situation, existence of "custody" is easily demonstrated. The most compelling factor is the presence of a search warrant: investigating officers secured prior permission from a magistrate to search a specific business establishment of which they knew Petitioner to be at least the manager and, in support of which, an affidavit had named Petitioner as the possessor of suspected contraband. The officers brought Petitioner to the front of the store, where he was obliged to witness a rather lengthy search of the premises. Nine officers were present, and most of them were armed. The doors of the store were closed, if not locked, and even the officers testified that they would not have permitted Petitioner to leave after the sack had been found.

It is clear to the Court that the factor deemed most significant by the Court in *Phelps*—focus of the investigation—here demands a finding that Petitioner was "in custody." This factor, together with the obviously coercive and threatening nature of the setting, readily detectable by any "reasonable man" in Petitioner's place, leads inescapably to the conclusion that, at the time of Petitioner's "confession" there already existed a situation compelling the application of the *Miranda* safeguards.[3]

Respondent also relies on *Miranda's* requirement of "interrogation," and cites Gonzales v. Beto, 425 F.2d 963 (C.A.5, 1970) for that proposition. In that case, the accused *volunteered* incriminating information "before any questions were addressed to him." *Gonzales*, at 966. In the case at bar, a specific question, inquiring about a specific item, was directed to a specific individual. There is no dispute that both the Petitioner and the questioning officer fully comprehended the substance of the inquiry and the identity of the person to whom it was addressed.

Respondent also cites two appellate cases which describe situations distinguishable from the circumstances surrounding the interrogation of Petitioner Brown. In Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476 (1968), the officer, conducting an on-the-street investigation, responded to a gesture by the victim of an assault by asking defendant whether he had beaten the injured party. The Court held that

> "here was not an officer staging an interrogation that had focused on a subject but an officer reacting to a street scene and trying to run down the facts." *Allen*, at 479.

In Lowe v. United States, 407 F.2d 1391 (C.A.9, 1969) the Court announced an "objective" standard not entirely harmonious with that preferred by the

---

3. The Court is comforted in this interpretation by recalling that trial judge Miron Love reached a similar conclusion and, at least on the face of the record, never altered it.

Fifth Circuit. *Lowe,* at 1397. But no reconciliation need be attempted here, since *Lowe,* like *Allen,* involved a routine on-the-street investigation clearly lacking the "compelling atmosphere" essential to a finding of "custody." *Lowe,* at 1394. In the case at bar, the search, and the inquiry that followed it, were preceded by substantial investigation and the issuance of a search warrant. This was no spontaneous reaction to an immediate crisis, but the product of long and detailed planning. In *Lowe* and *Allen,* moreover, the inquiries were made in an atmosphere of confusion that should have effectively diluted any suggestion of threat or coercion. Petitioner Brown, on the other hand, was confronted by nine officers, most of whom were armed, and who evidence the unmistakable impression that Petitioner was the focus of their investigation.

In short, the question posed to Petitioner—"What is this?" or "What's in the sack?"—must be considered in the context of the environment in which it was asked: the officers' obviously deliberate preparation, their thorough search, their focus on Petitioner. In such an atmosphere, an officer need not aim his gun at a suspect's head: the totality of circumstances has already produced a situation demanding the protections of *Miranda.*

Respondent's case thus stands or falls upon classification of Petitioner's "confession" as res gestae, a second ground invoked by the Court of Criminal Appeals. Respondent concedes that Texas is one of the few jurisdictions which holds admissible as res gestae a statement otherwise qualifying for the *Miranda* safeguards.

It is almost a truism that a constitutional requirement cannot be circumvented by a mere rule of evidence. A statement subject to exclusion by virtue of *Miranda* cannot be salvaged by being denominated as "res gestae." A recent opinion by the Maryland Court of Appeals expresses this view:

"The trial court admitted the statement under the theory that it was covered by the *res gestae* exception to the hearsay rule. We find that since the interrogation was a custodial interrogation, it could not be admissible under the *res gestae* rule." Shedrick v. Maryland, 10 Md.App. 579, 271 A.2d 773, 776 (1970).

The Court concludes that invocation of res gestae can have no bearing on Petitioner's constitutional right to the protections of *Miranda.*

Finally, respondent offers the argument that admission of Petitioner's incriminating statement was, at most, harmless error. But the discrepancy between Petitioner's name and the name appearing on the Liquor License for Petitioner's premises, coupled with the failure of respondent to demonstrate Petitioner's control over the contraband, indicates that the jury probably relied heavily on Petitioner's "confession." In any event, there is no clear showing that the statement constitutes harmless error.

It follows that Petitioner's application for habeas corpus must be granted. Respondent is granted ninety days from the date of this order to initiate new proceedings against the petitioner or to release him to the custody of federal authorities.[4]

---

4. Petitioner was sentenced in 1967 by Chief Judge Ben Connally of the Southern District of Texas to serve 16 years for conviction of conspiracy to smuggle heroin (67–L–202). Under the rule of Walker v. Wainwright, 390 U.S. 335, 88 S.Ct. 962, 19 L.Ed.2d 1215 (1968), Petitioner's present habeas corpus application is not vitiated by the outstanding federal conviction.