UNITED STATES of America
v.
Robert L. AMMIDOWN.
Crim. Nos. 1898–71, 1904–71.

United States District Court,
District of Columbia.

April 5, 1972.

**1356**

James E. Sharp, Edwin K. Hall, Asst. U. S. Attys., for the United States.

Albert J. Ahern, Jr., Thomas W. Farquhar, Washington, D. C., for Robert L. Ammidown.

## MEMORANDUM

SIRICA, Chief Judge.

This matter has been brought before the Court by the defendant, Robert L. Ammidown, through his counsel on motions to suppress evidence sought to be used by the government in the above-captioned proceeding.

Defendant Ammidown first seeks the suppression of several letters sent by him to various people while he was undergoing a court-ordered mental observation at Saint Elizabeths Hospital in Washington, D. C.

It appears that during this time a staff-psychologist advised the defendant to re-establish himself with those people who could help him clarify his present situation. The letters were sent pursuant to this advice. Although the defendant sent several letters out by the facilities provided, he also sent out at least two letters by way of a friend, thus avoiding the established procedure. It is these two letters in particular the government seeks to use and the defendant to suppress. Relying upon Title 18 U.S.C. Section 4244 and Title 21 D.C. Code Section 561, the defendant contends that either one or both of these statutes confer "a broad confidentiality" upon the above described letters. The issue presented is whether it is a violation of the above statutes for the government to use those letters at the defendant's trial on the question of guilt or innocence.

█ This Court cannot agree with the defendant's interpretation of these statutes. Nothing in either of these statutes suggests to the Court that any of these letters sent out by the defendant are protected from use by the government in the proceedings now pending. This is especially true of the two contested letters, the delivery of which was surreptitiously effected. It is obvious that the content of these two letters was to be hidden from the view of the hospital authorities including the staff-psychologist. What is suggested by this behavior though, is that the letters had no connection with the mental evaluation then taking place. For these reasons, the defendant's letters will not be suppressed, but upon their submission, will be admitted into evidence upon the issue of defendant's guilt or innocence.

█ The defendant next moves to suppress statements made by him to officers of the Metropolitan Police Department on October 2 and 7, 1971, because he claims they failed on both occasions to advise him of his constitutional rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In framing the issue presented by defendant, it is important to note that during the time these statements were taken, Mr. Ammidown was not a suspect, but rather an "eye-witness" to the rape-slaying of his wife, Linda. The issue, then, is whether the police must admonish witnesses of their constitutional rights whenever both the police and the witness are mutually desirous of having the witness reveal his knowledge to the police. After careful consideration of the circumstances surrounding the taking of both statements, the Court concludes that defendant Ammidown's contention is without merit.

It is clear that Miranda has provided procedures which ensure the Fifth Amendment protections against self-incrimination, but it is equally clear that the privilege against self-incrimination attaches only when the individual is subjected to police interrogation while he is in "custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 445, 86 S.Ct. at 1612. Ammidown was not in custody. As indicated above, Mr. Ammidown was not a "suspect," nor believed implicated in the death of his wife. On the contrary, the police considered Mr. Ammidown to be the only witness who could identify his

wife's assailant. That he himself did not think he was a suspect is evidenced by his statement in open court regarding certain tests given him by the police during those early morning hours of October 2:

> I volunteered for these tests. In fact, I told them that anything else they wanted to do, just feel free to do it. I would have no objections. So I voluntarily subjected myself to any test that they would desire to give me. (Tr. 53)[1]

The two tests to which the defendant was subjected, are part of standard operating procedure and are routinely given by the police in cases of this nature.

Of further significance is the fact that the police were in complete conformity with the recent standards enunciated in United States v. Comer, 137 U.S.App.D.C. 214, 421 F.2d 1149 (1970), and Allen v. United States, 129 U.S. App.D.C. 61, 390 F.2d 476 (1968). In taking the October 2 statement and its "sequel" on October 7, the police were engaged in a routine inquiry calculated to obtain facts necessary for an intelligent investigation. They had not focused upon a subject nor were they staging an interrogation. For the above reasons, the Court finds that the statements of October 2 and 7, 1971, were not taken illegally and therefore they are admissible.

█ Defendant next seeks the suppression of evidence gained by the police while impersonating the defendant on the telephone at his place of employment and during a subsequent rendezvous with an unknown and suspicious caller. Further objection is made to the employment of a "consent monitoring device" which recorded the above-described phone calls. Relying upon Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), Title 47 U.S.C. Section 605 and the "fruits of the poisonous tree theory," defendant Ammidown contends that evidence gained from these phone calls should be suppressed.

This Court finds defendant's argument unsupported in law or fact. The following facts are relevant to this finding: at the time the first phone call was received, Mr. Ammidown was not suspected of any wrongdoing and he was still considered a "witness." He was not immediately available and there was at that time justifiable concern for his safety. Indeed, Dr. Xavier Mena, the Acting Deputy Director of the Job Corps, who received the first phone call, at first believed that he was talking with the killer. (Tr. 221)[2]

The Court notes that the telephone calls for Mr. Ammidown, a branch level employee, were suspicious from the outset, coming as they did directly to the offices of the Director of Job Corps for the announced purpose of purchasing the defendant's car. It was Dr. Mena who first impersonated Mr. Ammidown. It was he who called the police, and it was he, a non-police agent, who precipitated the chain of events which disclosed an extremely dangerous extortion plot which necessitated police intervention. Indeed, the police did not engage in the impersonation until an actual meeting was arranged by the caller and Dr. Mena. The police, suspicious and unable to attach an explanation or reason for the calls, asked Dr. Mena to set up a meeting, if possible on Monday, October 18, when Mr. Ammidown was due to return from Florida. Dr. Mena tried this but the caller was impatient and would have no delay.

The eventual involvement of the police and the substitution of a police officer for Dr. Mena in the impersonation of Mr. Ammidown was necessary. The calls were very suspicious. Given the circumstances and the limited time in which to work, the police had to act. Their conduct was not only reasonable, but in every respect in conformance with existing law.

1. Transcript, Motion to Suppress, March 8, 1972.

2. Transcript, Motion to Suppress, March 9, 1972.

The government further argues that defendant Ammidown does not have standing to challenge the above discussed search and seizure. The government relies primarily on Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), wherein the Court reaffirmed the rule found in Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960):

> In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search and seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at some one else. 362 U.S. at 261, 80 S.Ct. at 731.

Assuming arguendo that the impersonation of Mr. Ammidown was violative of the Fourth Amendment protections against unreasonable search and seizure, this Court concludes that defendant Ammidown does not qualify as an aggrieved person. In addition to the facts set out above, this Court is mindful that the conversations seized were not his own, nor did they take place on his premises or at any other location over which he exercised any control or proprietary interest. The search and subsequent seizure was clearly directed at an unidentified caller who was calling a key government witness to a rape-slaying. Mr. Ammidown, at that point in time, was still considered an innocent party. Relying upon United States v. Anthony, 444 F.2d 484 (9th Cir. 1971), the government further asserts that no constitutionally justifiable expectation of the defendant's privacy was violated. This Court agrees.

The facts in the present case in no way resemble Katz v. United States. The instant fact situation brings this case outside the scope of the holding in Katz. Here, the police acted in a most reasonable manner. They investigated suspicious yet vague telephone calls to a man whom they believed was not yet out of danger; a man who at all times maintained his innocence, and, indeed had occasion to tell the police to do whatever they had to do. Unlike the eavesdropping in Katz, the police didn't listen in on a conversation between others; the officer was a party to it. Moreover, in this case the information obtained from these conversations is not being used to prove an offense related to the telephone calls. The calls are only collaterally related to this case and are not to be offered into evidence during the trial. It is for these reasons this Court holds that no constitutionally justifiable expectation of privacy of Mr. Ammidown was violated.

Defendant Ammidown next seeks the suppression of his statements given to the police on October 17, 1971. Relying upon Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), and Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), the defendant contends that the damaging admissions made on October 17 were the result of "psychological duress," and therefore were not voluntary. The oral statement was given in the kitchen at the home of the decedent's brother, Clyde Johnson, in Orange, Virginia. Also present were Clyde's wife, "Resa" Johnson and detectives Moriarity and Thornton. It appears that defendant's son was not present at this time. All were situated around the kitchen table and drinking coffee when the "business at hand" was brought up.

■ It is this Court's opinion that the instant case is not within the scope of the cases cited by defendant. None of the key elements present in those cases are to be found here. The relationships between the defendant and the people present when the admissions were made are significantly different. Moreover, there is no evidence that the relatives present were acting pursuant to police instructions, nor that the police were attempting to use Mr. and Mrs. Johnson as tools to weaken the defendant's resistance or overcome his reluctance.

On the contrary, the Court feels this was the statement of a man whose conscience was bothering him to the point that he was very happy to get out of his system what he apparently had done; this he did in the absence of threats or psychological duress.

The defendant further asserts that he was not properly advised of his constitutional rights at the time he made the statement of October 17th. The Court disagrees. The record reflects that the police officers complied fully with the requirements of *Miranda*. The testimony given by Sergeant Moriarty, and corroborated by Clyde Johnson reveals that the defendant was properly admonished as to his constitutional rights, and that he knowingly, intelligently, and voluntarily waived those rights before any questions were put to him.

Alleging violations of Rules 5(a) and 40(a) of the Federal Rules of Criminal Procedure, the defendant next attacks the written statement given to police much later that same day at police headquarters.

■ This argument is without merit. First, and crucial to the issue raised, this Court finds that pursuant to strict instructions given by Assistant United States Attorney Harold J. Sullivan, Chief of the Major Crimes Unit, neither Lieutenant Thornton nor Sergeant Moriarty placed the defendant under arrest in Virginia. It was made perfectly clear to the defendant that he was not under arrest. The record reflects that Mr. Ammidown freely, without any coercion or misrepresentation of his new status as a suspect, accompanied the police into the District of Columbia where he knew he would be arrested. The defendant's arrest occurred in the District of Columbia in the police cruiser on the 14th Street Bridge. Since the arrest took place in the District of Columbia, not in Virginia, there was no need for the removal hearing as prescribed in Rule 40(a) Federal Rules of Criminal Procedure. And, since the defendant was brought before a magistrate as soon as one was available—the next day, Monday, October 18—there was no unnecessary delay and no violation of Rule 5(a). The written statement taken at police headquarters was given by the defendant after he was fully apprized of his constitutional rights; he gave it voluntarily and intelligently. The only pressure issued from his own conscience.

■ Finally, the defendant at oral argument, asserts that the main thrust of his motions is to show that the police had more than sufficient evidence to establish probable cause for his arrest. That since they intended to arrest him that 17th day in October, they should have secured an arrest warrant. Defendant's statement is not supported by the facts.

It is clear from the record that the police did not have probable cause and did not intend to arrest Mr. Ammidown. They did not secure an arrest warrant as they saw no need for one. The purpose of the October 17 visit was to report to Mr. Ammidown the developments in the investigation, especially with respect to the recently exposed extortion plot. In addition, they hoped that he could add to their information or put some meaning to the phone calls and the extortion plot. It was obvious that the four people recently arrested were attempting to blackmail Mr. Ammidown; that they knew something about Mr. Ammidown the police did not know, and that the police were justifiably curious. They were not sure what Mr. Ammidown might say to them. As Sergeant Moriarty said, "It could have been anything." This context explains and justifies Sergeant Moriarty's apprizing the defendant and the Johnsons of their constitutional rights before he asked any questions. That Ammidown's subsequent inculpatory admissions caught the detectives completely by surprise is further supported by their action in calling the Assistant United States Attorney for "legal advice." The Court is unable to find from these facts any foundation for defendant's contention that suffi-

**1360**

cient probable cause for an arrest pre-existed the defendant's voluntary oral statement on October 17, 1971.

Accordingly, for the foregoing reasons, the defendant's motions to suppress are denied.

