**UNITED STATES of America**

v.

**Johnny B. DELAMARRA.**

**Crim. No. 1330-66.**

United States District Court
District of Columbia.

Oct. 25, 1967.

Earl J. Silbert, Asst. U. S. Atty., Washington, D. C., for the United States.

Edward T. Kehoe, Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

When this matter was called for trial, counsel for the defendant requested that the Court conduct a hearing out of the presence of the jury as to the admissibility of certain statements alleged to have been made by defendant in violation of his rights under the *Miranda*[1] doctrine.

This indictment charges a larceny at Howard University within the District of Columbia. It appears that a safe in the University Center building was used as the repository for the funds of certain student activities programs. On or about the 13th of September, 1966, a substantial quantity of cash was placed within the safe. Approximately one thousand dollars was discovered missing on September 15th, having apparently been stolen the night before. Since the safe had not been forced open, and was found locked on the 15th, suspicion focused initially upon those employees who had the combination to the safe. Defendant, a custodian in the building, was not in this category. He was, however, interviewed concerning the theft, and on the morning of September 30, 1966, allegedly admitted his guilt to Mr. Colbert B. Ruffin, an official of Howard University, and Sgt. Ben Chaplin, of the Metropolitan Police, in the guard's briefing room at Howard University. It appears that defendant was then placed under arrest, warned of his rights[2] as required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and some 45 minutes later, repeated his confession

---

1. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Warning as to your rights: You are under arrest. Before we ask you any questions, you must understand what your rights are. You have the right to remain silent. You are not required to say anything to us at any time or to answer any questions. Anything you say can be used against you in Court. You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning. If you cannot afford a lawyer and want one, a lawyer will be provided for you. If you want to answer questions now, without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

in the presence of a stenographer and a tape recorder. Defendant was then taken to police headquarters and booked. At the preliminary hearing on October 3, 1966, defendant came over to Mr. Vincent Johns, Program Director at the University, said he was sorry and promised to return the money.

At the request of counsel for the defense, the Court conducted a hearing prior to the selection of the jury, to determine the admissibility of each of these three statements in light of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479 (1957), and *Miranda*, supra.

After hearing counsel preliminarily in chambers, the Court listened to the testimony of Mr. Ruffin, Sgt. Chaplin, Mr. Johns, and the defendant, Johnny B. Delmarra.

The defendant testified that he was at the University at about 8:00 o'clock on the morning of the 30th to pick up his check. He was informed by his supervisor, a Mr. Newsome, that Mr. Ruffin wished to talk to him in the guard's locker room, adjacent to Mr. Ruffin's office in the physical plant building. According to the defendant, this interview began about 8:30, and in response to Mr. Ruffin's inquiries, he denied any knowledge of the theft. After Sgt. Chaplin arrived, the defendant stated that both the sergeant and Mr. Ruffin questioned him about other unrelated thefts from the University, about his prior criminal record, and about how he bought the furniture in his apartment. Confronted with the statement of a third party that he had been seen with a large sum of cash, the defendant claimed he had won a little money gambling. The defendant further stated that Ruffin and Chaplin asked him about his recent purchase of an automobile. Defendant's explanation, both at the time of the interview and at the hearing, was that he obtained the money to pay for the car by gambling, from a loan, and from his salary. At the hearing, the defendant first stated the purchase price was $595, but admitted on cross-examination that he had actually paid $703. The amounts he said he obtained from gambling, a loan, and his salary appeared to be insufficient to total this latter sum. According to the defendant, Chaplin intimated that unless he confessed to the theft, his wife would somehow be involved in the case. Defendant testified that it was for this reason he admitted the theft.

The testimony of Mr. Ruffin and Sgt. Chaplin substantially contradicts that of the defendant. Mr. Ruffin testified that at the time of the interview, his investigation was still directed at those who had known the combination of the safe, and that further questioning of these parties was planned. Seeing defendant at the University prompted him to call Sgt. Chaplin that morning for the reason that the occasion would be a convenient time for the defendant to be interviewed. According to Mr. Ruffin, he also intended to talk further with other custodial personnel.

Both Mr. Ruffin and Sgt. Chaplin denied having questioned defendant about the furniture in his apartment and about his criminal record. On his application for work to Howard University, the defendant stated he had no record, and Mr. Ruffin and Sgt. Chaplin testified they had no knowledge of such a record at the time of the interview. Both also deny any threats about the involvement of defendant's wife. Mr. Ruffin stated that he left during the interview when it appeared that the defendant could provide no useful information. According to Sgt. Chaplin, after Mr. Ruffin left, defendant implicated a guard. Since Mr. Ruffin, as Safety and Security Officer of the University, was in charge of the guards, Sgt. Chaplin stated that he went out and requested Mr. Ruffin to return and hear what defendant had said. Mr. Ruffin then sought to verify defendant's accusation, but found discrepancies in it. According to both Mr. Ruffin and Sgt. Chaplin, when asked about these discrepancies, the defendant said that he might as well tell the truth, that he himself took the money, and related a detail that could be known only to one who had

been in the safe. This convinced the two other men.

Sgt. Chaplin testified that he then arrested defendant, advised him fully of his rights, and that the defendant agreed to record a complete statement. Mr. Ruffin explained that the 45 minutes' delay was caused by difficulty in securing a tape recorder from another building, and in setting it up. The tape recording itself indicates that defendant's rights were repeated to him at the start of the recording.

The hearing in open Court lasted approximately three hours, during which the Court closely observed the demeanor of the witnesses. On the stand, the defendant admitted seven or eight prior larcencies, before coming to Washington. The Court may consider these admissions for the purpose of assessing defendant's credibility, for these offenses involve dishonesty. They also indicate extensive experience with the processes of the criminal law.

Four issues were thus presented to the Court. First, was the defendant the object of custodial interrogation as defined in *Miranda* so as to render his initial admission prior to any warnings inadmissible in his trial? Second, is the delay that ensued as a result of procuring the tape recorder sufficient to require the exclusion of the second, recorded statement, under the rationale of *Mallory*? Third, may the United States introduce the apology by defendant to Mr. Johns into evidence at trial? Finally, were all three of these statements voluntary and free of coercion as required by Jackson v. Denno?

The Court is of the opinion that the defendant was *not* the object of custodial interrogation at the time of his original admission. He had not been arrested; indeed, until the admission, he was being questioned only as part of a general investigation by the University in cooperation with the Metropolitan Police. He had not been requested to go to police headquarters or a precinct station; he was on the premises of his employer, Howard University, whence he

had gone to pick up his check. Sgt. Chaplin testified that he believed the defendant's accusation of a guard. Mr. Ruffin testified that he still considered those with the combination to the safe prime suspects. The investigation had not yet focused upon the accused within the meaning of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). There is nothing in the record to indicate that defendant, prior to his initial admission, was deprived of his freedom in any significant way. Indeed, until this time, both Mr. Ruffin and Sgt. Chaplin testified that he was free to go if he desired to do so. There is no need for *Miranda* warnings to be given to all who choose to cooperate with law enforcement officers in furtherance of a still general investigation. See Hicks v. United States (D.C.Cir. July 7, 1967), 382 F.2d 158.

Based on the testimony of both Mr. Ruffin and Sgt. Chaplin, as well as a hearing of the tape itself, the Court finds by clear and convincing evidence beyond a reasonable doubt that the defendant made a knowing and intelligent waiver of his right to remain silent, his right to confer with counsel, and his right to terminate the interview at any time. The defendant and his counsel heard the testimony on the basis of which this finding is made and offered no evidence or argument to the contrary at this time.

The Court is also of the opinion that no unreasonable delay followed defendant's arrest so as to render the second, recorded statement inadmissible under the *Mallory* rule. The *Mallory* decision proscribes delays in preliminary hearings after arrest, and requires the exclusion of any statement obtained during such delays. That decision does not proscribe *all* delays; rather only those that are unnecessary and unreasonable. Muschette v. United States, 116 U.S.App. D.C. 239, 322 F.2d 989 (1963), is enlightening in this regard. Where a slight delay is occasioned not by an effort to induce further statements from an accused, but rather, by temporary clerical difficulties in reducing an oral statement

to unalterable writing, or mechanical recording, the delay is not unreasonable. In the present case, the defendant was immediately ready to record his statement and apparently remained so. There is no allegation, indeed, the record is quite to the contrary, that any further persuasion was needed or attempted. The Court notes that actual preliminary hearing was delayed till October 3, 1966, but that Sgt. Chaplin was told at the time of booking that no further cases would be accepted by the Court of General Sessions until after the weekend. In addition, the defendant was not interrogated during this time; rather, he was free on bond. For the record, the Court also notes that no challenge is made to the warnings that were given to the accused before his recorded statement. They were comprehensible, complete, and a thorough implementation of the *Miranda* decision.

The Court further concludes that evidence of the apology and promise made to Mr. Johns by the defendant at the preliminary hearing is admissible if offered at trial. This statement was clearly voluntary, did not result from any questions by Mr. Johns, and did not flow from any official or semi-official responsibilities of Mr. Johns that would cause it to be considered within the purview of Killough v. United States, 119 U.S.App.D.C. 10, 336 F.2d 929 (1964).

Finally, the Court finds all of these statements voluntary and uncoerced within the meaning of Jackson v. Denno. The defendant claimed to have been threatened with the involvement of his wife, and the use of his criminal record. Both Mr. Ruffin and Sgt. Chaplin deny these allegations. The Court carefully observed the demeanor of the witnesses at the hearing, and in view of the testimony elicited, finds the defendant's claim of coercion unworthy of belief. The recorded statement is not that of a man speaking against his will. It is cogent, and sincerely spoken, and although not a factor in determining its admissibility, reveals particulars that no one save a person who had been in the safe could know. Of course, the ultimate decision as to the voluntariness of the confession is for the jury in accordance with the decision of the Court of Appeals in Clifton v. United States, 125 U.S.App. D.C. 257 (1966), 371 F.2d 354, 360, cert. denied, 386 U.S. 995, 87 S.Ct. 1312, 18 L.Ed.2d 341.

Therefore, the Court concludes that the initial admission of the defendant, his subsequent recorded confession, and his apology to Mr. Johns will all be admissible at trial.