Michael James BREWSTER, Appellant,

v.

UNITED STATES, Appellee.

No. 5228.

District of Columbia Court of Appeals.

Argued Sept. 30, 1970.

Decided Dec. 3, 1970.

John Z. Noyes, Washington, D. C., for appellant.

Kenneth Michael Robinson, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry, James E. Sharp, and Herbert B. Hoffman, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, KERN and NEBE-KER, Associate Judges.

FICKLING, Associate Judge.

After a jury trial the appellant was convicted of carrying a concealed weapon without a license in violation of D.C.Code 1967, § 22–3204 and sentenced, pursuant to D.C.Code 1967, § 22–3215, to 1 year in jail and $1,000 fine. An additional year was added in the event of default in payment of the fine. D.C.Code 1967, § 16–706.

As a defense the appellant asserted that 5111 13th Street, N.W., was his "dwelling house" and, hence, he could not be convicted of violating § 22–3204.[1] Along with other evidence, his statement to the police that he had no address was introduced against him. At a preliminary hearing the judge ruled that *Miranda* was not meant to apply to routine questions such as name, age, and address and that, in any event, he had been sufficiently informed of his rights.

The appellant contends that the mere reading of *Miranda* warnings from a card is insufficient; police are required to take further steps to insure that a suspect fully understands the significance of these warnings. It is also urged that the additional year in default of payment of the fine was an illegal sentence.

On March 19, 1969, the police department responded to a call complaining of disorderly conduct at 5111 13th Street, N.W. A sergeant was stationed in front of the house, while a squad car drove up in the rear and beamed a spotlight on the back porch. An officer testified that he ob-

served the appellant toss something from the porch into the next yard and then begin to move up an alley toward the front of the house. The officer yelled out, whereupon the sergeant moved in and apprehended the appellant. A fully loaded .32 caliber automatic pistol was found in the next yard.

The sergeant, using the standard police form PD 47, read to the appellant his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The record indicates that there was no response and no questions were asked at that time. Later, at the stationhouse, the appellant was handed a copy of form PD 47 and advised to read it. He informed the police that he could read and then spent several minutes looking down, appearing to read the card. There was no police inquiry as to whether the appellant understood the content of the card. While describing the appellant's reaction to custody, the sergeant testified that "[h]e was quiet. He answered very few questions. He didn't wish to speak."

The police questioned the appellant as to his address, which they wanted for the preparation of a lineup sheet. The appellant answered in words to the effect that he had no fixed address.

The appellant is a 20-year-old high school dropout with a low socio-economic background. It is undisputed that he lived at 5111 13th Street, his grandmother's house, at least until June 1968. His father still resides at that address; his mother is deceased. Though he admits that he now lives with a friend on Eastern Avenue, he contends that the 13th Street address remains his home. The record indicates that he never sleeps at 13th Street, rarely eats there, but keeps most of his clothes at that address. The grandmother testified that he no longer lived with her though he continued to stop in once or twice a week.

---

1. "No person shall within the District of Columbia carry either openly or concealed on or about his person, *except in*

*his dwelling house* * * * a pistol, without a license therefor * * *" (Emphasis added.)

Unable to post an appeal bond after his conviction, the appellant began serving his sentence. By signing a pauper's oath, he was freed after serving only 30 days of the additional year's sentence imposed because of his failure to pay the fine.[2] Having completed his sentence, he was released from custody on February 19, 1970.

Since the appellant has completed his prison term, we are faced with the threshold question of mootness as to both conviction and sentence.

■ In the past we have followed the rule laid down by the Supreme Court in St. Pierre v. United States, 319 U.S. 41, 63 S. Ct. 910, 87 L.Ed. 1199 (1943), that where a sentence has been served, an appeal from the conviction is moot unless the appellant can show ascertainable collateral consequences which threaten him with legal detriment.[3] However, in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 2d 917 (1968), the Court, discussing the collateral consequence doctrine, explained that an appellant need no longer show a specific ascertainable consequence which threatens him; mere possibility of detriment is enough. The Court stated

a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be im-

posed on the basis of the challenged conviction. [392 U.S. at 57, 88 S.Ct. at 1900.]

More important, detrimental effect will be presumed thereby relieving the appellant of the burden of proving the existence of collateral consequences. In the instant case, the presumption of the existence of collateral consequences stands uncontroverted.[4] Therefore, in regard to the conviction, this appeal is not moot.

■ It is necessary to distinguish the question of mootness of that portion of the appeal concerned with the allegedly illegal sentence. If, as a result of his brush with the law, the appellant is to suffer collateral consequences involving legal detriment, they will flow from his conviction rather than from his having served an extra 30 days in jail.[5] If his conviction is not overturned, he will suffer the same consequences, regardless of what we say, in regard to a portion of his already-served sentence. Therefore, we hold that his release has mooted questions concerned with the legality of his sentence.

At a hearing below, the court ruled that the appellant's statement, given while in police custody, that he had no fixed address was admissible for two reasons: first, because *Miranda* does not apply to a routine

---

2. 18 U.S.C. § 3569 provides that when an indigent convict is in prison solely because he failed to pay a fine, he may be released after serving 30 days if he signs a pauper's oath. In this case the appellant apparently served his time for the 1 year sentence and, after serving an additional 30 days on the 1 year term he received for failure to pay the fine, he signed a pauper's oath and was released.

3. Washington v. United States, D.C.App., 213 A.2d 819 (1965); Byrd v. District of Columbia, D.C.App., 201 A.2d 536 (1964); Butler v. District of Columbia, D.C.App., 200 A.2d 86 (1964), rev'd on other grounds, 120 U.S.App.D.C. 317, 346 F.2d 798 (1965); Rosenau v. District of Columbia, D.C.Mun.App., 147 A.2d 445 (1959); Annot., 9 A.L.R.3d 462 at § 8(d) (1966). *But see* 200 A.2d at 89 (dissenting opinion).

4. Rather, it is obvious that a detrimental consequence does exist. D.C.Code 1967, § 22–3204, allows imprisonment for up to 10 years for a second conviction. On his first conviction, an offender is sentenced under § 22–3215 which allows a maximum of only 1 year.

5. As a result of Williams v. Ill., 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), the 30-day requirement of 18 U.S.C. § 3569 is of questionable constitutional validity, at least in cases such as this where it envisions a term of 30 days more than the statutory maximum for the offense involved. If accepted, the reasoning of a recent case should make the 30-day requirement absolutely unconstitutional regardless of the statutory maximum for the offense involved. *See* In re Antazo, 3 Cal.3d 100, 89 Cal.Rptr. 255, 473 P.2d 999 (Cal.Sup.Ct., 1970).

question such as "what is your address" and, also, because even if it did apply, the appellant was sufficiently informed of his rights.

■ We disagree with the court's first reason. The question as to the appellant's address in this case was not merely routine.[6] That this is so is amply demonstrated by the prosecution's use of the statement. The fifth amendment acknowledges a person's right to refrain from self-incrimination. The purpose of *Miranda* is to effectuate this right during custodial interrogation. The fifth amendment applies to questions concerning a person's address if they may be incriminating and, hence, *Miranda* also applies.

■ We do, however, uphold the finding that the *Miranda* warnings were in fact given.[7] The police standard form which was used here contains all the information which the Supreme Court ordered.[8]

■ We note that there is a substantial question not raised on this appeal as to whether appellant waived any of his rights after he was given the *Miranda* warning. However, since there is overwhelming evidence, including a statement by the head of the household, that the 13th Street address was not appellant's dwelling house, we are satisfied beyond a reasonable doubt that if

6. In any case, whether it is routine is not a relevant consideration. *Miranda* applies to custodial interrogation. Routine questions, no matter how innocuous they may seem, are part of an interrogation. The fact that an interrogation contains nothing but routine questions does not make it any less an interrogation; nor, more emphatically, does the quality of routineness suspend fifth amendment rights.

7. In United States v. McNeil, D.C.Cir., 433 F.2d 1109, 1112 decided October 31, 1969, the Circuit Court of Appeals said "only if the judge's decision lacks substantial support in the evidence are we disposed to alter it."

8. The form reads as follows:
You are under arrest. Before we ask you any questions, you must understand

there was error, it was harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Affirmed.

what your rights are. You have a right to remain silent, you are not required to say anything to us at any time or to answer any questions. Anything you say can be used against you in court. You have a right to talk to a lawyer for advice before we question you and to have him with you during questioning. If you cannot afford a lawyer and want one, a lawyer will be appointed for you. If you want to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have a right to stop answering at any time until you talk to a lawyer.
*See* United States v. McNeil, *supra* note 7 at 1110–1111, n. 4.