**Howard G. BROWN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 5378.**

District of Columbia Court of Appeals.

Argued March 16, 1971.

Decided June 22, 1971.

---

Mary Magilligan Wiggers, appointed by the court, for appellant.

John E. Drury, III, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Jerome Wiener, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, PAIR and REILLY, Associate Judges.

PAIR, Associate Judge:

Appellant was charged with carrying a pistol without a license in violation of D. C.Code 1967, § 22–3204. At a hearing on a pre-trial motion to suppress, as evidence, the pistol and certain admissions of the appellant it was urged (1) that the pistol was the product of a search and seizure violative of his Fourth Amendment rights and

(2) that the admissions were obtained from him under circumstances condemned by the doctrine of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The motion was denied and, after trial without a jury, appellant was found guilty. On this appeal, the principal contention is that the trial court erred in denying the motion to suppress. We affirm the judgment of conviction.

The operative facts are not in dispute. On February 3, 1970, appellant, a resident of Baltimore, Maryland, and an employee of the Washington City Post Office, arrived at his place of employment about 12 o'clock midnight. In a pocket of his outer coat was a fully loaded revolver. Appellant went directly to the post office cloak room, checked his outer coat with the attendant and received from him a ticket, the duplicate of which the attendant attached to the coat.

Sometime thereafter the attendant, in the routine discharge of his duties, stooped to pick up a scarf and, in arising, his head was in contact with a hard object in the pocket of a coat. His curiosity being aroused, the attendant placed his hand on the outer surface of the coat pocket and felt what he identified as a pistol. The attendant immediately notified his supervisor who, about 3 o'clock in the morning, reported the matter to James Bones, a postal inspector. Mr. Bones, who was at his home when he received the report, contacted the tour superintendent at the City Post Office and directed him to "look into the pocket" and, if the object described by the attendant was, in fact, a revolver, to remove it and take it to his office.[1]

Shortly thereafter the tour superintendent came to the cloak room and inquired of the attendant, "[W]here is the gun? * * * [l]et's see it." The attendant, after stating that "it is still in that coat," reached into a pocket of the coat and brought out a .32 caliber revolver and handed it to the tour superintendent. Found also in a pocket of the coat was a card bearing appellant's name.

Mr. Bones arrived at the post office about 4 o'clock in the morning.[2] Appellant, called to the office of the tour superintendent, was advised by Mr. Bones that because administrative and criminal considerations were involved, before talking to him, appellant would have to clearly understand what his rights were with respect to the criminal aspect of the matter. Appellant was then advised that he had a right to remain silent and to have the services of an attorney. He was advised further that if he decided to answer questions, he was free to stop at any time.

When asked whether, under the circumstances, he desired to respond, appellant stated that he did because he had nothing to hide. He then acknowledged ownership of the revolver, that it was not registered, and that he did not have a license to carry it. He stated that he had recently been robbed and that he carried the revolver for his protection.

The matter having been reported to the Metropolitan Police Department, two officers responded and received from Mr. Bones the loaded revolver. The *Miranda* warnings[3] were then read to appellant, aft-

---

1. Although not mentioned in the briefs or at oral argument, the court notices that G.S.A. Rules and Regulations, 41 C.F.R., Subpart 101–19.3—Conduct on Federal Property, provide by § 19–311 that no person, while on federal property shall carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes. Each occupant agency is responsible for the enforcement of such rules and regulations.

2. Mr. Bones testified that his purpose was to investigate the allegation that there was an employee of the post office who was armed, and that it was his duty to "investigate and handle all on duty misconduct, other than depredation of the mails, theft of mail."

3. (1) That he has a right to remain silent; (2) that any statement made can be used against him in a subsequent trial; (3) that he has a right to have an attorney

er which he made to the police the same admissions he had made to Mr. Bones, the postal inspector.

In urging reversal of his conviction, appellant contends that the seizure of the pistol from the pocket of his coat contravened his Fourth Amendment rights. Thus the threshold question is whether the action complained of was reasonable under the circumstances, since the Fourth Amendment's proscription is only against unreasonable searches and seizures.

The Supreme Court has said on numerous occasions that there can be no ready test for determining reasonableness, other than by balancing the governmental interest which gave rise to the need to search against the invasion which the search or seizure entails. *See* Terry v. Ohio, 392 U. S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Camara v. Mun. Court, 387 U.S. 523, 534–535, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

In disposing of appellant's contention, the facts and circumstances surrounding the seizure of the pistol are therefore crucial. It was about 3 o'clock in the morning when the postal inspector was called at his home and informed by a reliable source (the tour superintendent) that an unidentified postal employee had brought a pistol onto the premises.

■ While the circumstances surrounding the discovery of the pistol were unusual, once the postal inspector was informed it was his duty to respond quickly and in a manner calculated to accomplish the obvious purpose of the G.S.A. Regulations.[4] *See and compare* United States v. Frye, D.C.App., 271 A.2d 788 (1970); United States v. Dowling, D.C.App., 271 A.2d 406 (1970).

Appellant says however, that by checking his coat in a quasi-public place, he did not relinquish his Fourth Amendment right of privacy and that, even though the attendant suspected that the hard object in one of the pockets of the coat was a pistol, the warrantless search and seizure of the pistol was without legal justification.

But the postal inspector was not investigating a matter unconnected with the discharge by appellant of his duties as a postal employee. *Cf.* United States v. Blok, 88 U.S.App.D.C. 326, 188 F.2d 1019 (1951). The subject of the investigation was the alleged violation of the G.S.A. Regulation which prohibited the carrying of any firearm while on federal property, except for offical purposes.

It is needless to say that a pistol is an easily movable object and any ordinary prudent postal inspector could reasonably conclude that its unauthorized possession in a United States Post Office at 3 o'clock in the morning posed a danger, not only to the safety of the mails but also the safety of postal employees, a danger the regulations must have been intended to control.

■ We hold then, on this record, that the warrantless search and seizure of the pistol by postal authorities was reasonable and therefore constitutionally permissible. *See* United States v. Collins, 349 F.2d 863 (2d Cir. 1965). *Cf.* Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 306, n. 11, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

Appellant contends, nevertheless, that the judgment of conviction was based upon admissions which, on his motion, should have been suppressed as the product of a custodial interrogation proscribed by Miranda v. Arizona, *supra.*

■ *Miranda* requires that a person who, in respect to a criminal matter, is subjected to custodial interrogation by the police or other law enforcement officer, must be given, prior thereto, certain warnings, un-

---

with him during interrogation; and (4) that an attorney will be appointed for him if he is an indigent.

4. *See* note 1.

less the right to the warnings is voluntarily, knowingly and intelligently waived. In this jurisdiction, custodial interrogation is understood as questioning initiated by police after a person has been deprived of his freedom. Allen v. United States, 129 U.S. App.D.C. 61, 63–64, 390 F.2d 476, 478–479 (1968) ; Hicks v. United States, 127 U.S. App.D.C. 209, 213, 382 F.2d 158, 162 (1967).

▮ Here there is no showing that appellant, when interrogated by the postal inspector, was under arrest or that he was given reason to believe that he was under arrest, nor does it appear that such interrogation was ever shifted to the "accusatory stage" for the purposes of *Miranda. Cf.* Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In fact, prior to any interrogation of the appellant, he was specifically informed by the postal inspector that the subject of the investigation was an administrative matter with possible criminal implications.[5]

But more than this, it is undisputed in the record that appellant was given the full *Miranda* warnings when they were required and by whom they were required to be given.[6] Upon their arrival at the post office, the police officers, before attempting any interrogation of appellant, read to him the full *Miranda* warnings. Appellant then stated that he had nothing to hide and, after expressing concern for his job, admitted again, this time to the police officers, that the pistol was his, that he was not licensed to carry it, and that he brought it to work for his own protection.

Compelled therefore is the conclusion that the trial court did not err when it refused to suppress as evidence the pistol and the admissions made by appellant, from which it must follow that the judgment of conviction is

Affirmed.

---

5. The postal inspector, in attempting to warn appellant of his rights under *Miranda*, was perhaps overzealous since he had no responsibility in respect to D.C.Code 1967, § 22–3204. In any event, there appears to be no case law which requires *Miranda* warnings in connection with the investigation of an administrative matter. *See* United States v. Delamarra, 275 F.Supp. 1, 4 (D.D.C.1967).

6. There is not a scintilla of evidence that the police either initiated or participated in the interrogation of appellant prior to the seizure of the gun or that there was any continuous interrogation of appellant within the purview of United States v. Robinson, D.C.Cir., 439 F.2d 553 (1971).