**Rudolph C. OWENS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 8833.**

District of Columbia Court of Appeals.

Submitted March 25, 1975.

Decided July 7, 1975.
Rehearing en Banc Denied
Aug. 26, 1975.

---

Noel H. Thompson, Washington, D. C., appointed by this court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and Timothy J. Reardon, III, Asst. U. S. Attys., were on the brief for appellee.

Before FICKLING, KERN and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

Appellant was apprehended at gunpoint by a single police officer who, alone, had gone on the roof of the store emitting a burglar alarm. It was about 2 a. m. The officer had seen a shadow there and had gone up to investigate with his gun drawn. When he saw appellant, he ordered him to "hold it right there." Appellant got in a prone position. Within "one or two seconds" of the apprehension, and as he was being handcuffed, appellant responded to a question as to what he was doing on the roof, saying, "Just getting tires, man." (The store was a retail tire outlet.) We hold that statement admissible at trial. Accordingly, appellant's conviction of attempted burglary (second degree), D.C. Code 1973, §§ 22–103 and –1801(b), is affirmed.

At the pretrial motion to suppress statements, this statement was held to be admissible—not the product of forbidden custodial interrogation under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966). A subsequent statement, made after a reading of *Miranda* rights, was suppressed because of the absence and unavailability at the hearing of a second officer who had performed that function and to whom appellant then spoke. However, appellant responded to the recitation of those rights by saying that "he understood them and knew them by heart."

The real issue presented is whether a person who is apprehended in the very commission of a crime must, at that very instant, be advised of his so-called *Miranda* rights as a condition to the admission of testimony respecting his reply to a single inquiry seeking a justification for the seemingly criminal conduct. It would seem that the single inquiry was a part of the apprehension rather than an event separately orchestrated by the police to obtain evidence.

■ While it may be said that the *Miranda* warning requirements should be applied in a liberal and enlightened fashion, they surely cannot be applied without regard to the circumstances under which a statement is made. Such was observed in *Allen v. United States*, 129 U.S.App.D.C. 61, 63–64, 390 F.2d 476, 478–79 (1968), with particular reference to the "relative routineness of an inquiry" as an "indicat-[ion] that the police are still in a state of investigation." That opinion also rightly eschewed any notion that it was "possible or desirable to simplify the matter by saying that whenever any officer is prepared to detain an individual he may not ask any questions." *Id.* at 64, 390 F.2d at 479.

Given then the predicate that despite the broadness of some of the language in the *Miranda* opinion,[1] its holding must be ap-

---

1. 384 U.S. at 444, 86 S.Ct. at 1612:
   By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . .
   [Footnote omitted.]

384 U.S. at 477, 86 S.Ct. at 1629:

   The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or

plied with reason and deference to the variety of possible types of on-street encounters, we shy away from an easy, mechanical application of the black-letter words. We must first look to the actual holding of *Miranda,* which in the context of the entire opinion is not difficult to understand. The Court stated, 384 U.S. at 471, 86 S.Ct. at 1626:

> Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. . . .

What is significant about this language and the facts of the cases decided in that opinion is that the Court, in each instance, was confronted with a post-arrest session during which interrogation was the main or significant activity. Each suspect was *"held for interrogation".* (Emphasis supplied.)

While a reading of the *Miranda* opinion reveals a great effort by the majority to cover broadly different degrees of restraint calling for warning as to rights and to consider all types of responses, it is clear that the opinion used the words "interrogation" and "questioning" interchangeably and without the same kind of

elaboration. While it is no doubt true that the number of questions, or the "quality of [their] routineness" is irrelevant to this question (*see Brewster v. United States,* D.C.App., 271 A.2d 409, 412 n. 6 (1970)), the touchstone for decision cannot alone be the sheer mechanics of liberty or restraint. The court, to approach this vital area of constitutional law, should not be disposed to isolate a unitary transaction concerning the suspect and the police into separate components and test the legality of each by seconds measured on a stopwatch.

As has been observed, the situation revealed on this record is a unitary one. There was no holding "for interrogation" as surely there would have been if the same question had been asked at a time *after* the offense, or when the situation had cooled, in an effort to obtain evidence from the suspect which might help convict him. Here, the suspect, unless innocently on the roof, was caught in the very commission of a crime and it was during the contemporaneous securing of his hands that the officer asked the question—a question equally capable of eliciting an innocent explanation or revelation of the fact that the suspect was not alone.[2] The federal circuit court here recognized in *Bosley v. United States,* 138 U.S.App.D.C. 263, 267, 426 F.2d 1257, 1261 (1970), and we also observe,

---

otherwise deprived of his freedom of action in any significant way. . . .
384 U.S. at 478, 86 S.Ct. at 1630:
> To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. . . .

We also observe that other language of the opinion recently has been significantly limited. *Compare Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), with the following language from 384 U.S. at 476–77, 86 S.Ct. 1602, 1629:
> Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely "exculpatory." If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In

fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement. . . .
> *See also Oregon v. Hass,* —— U.S. ——, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

2. Had a response been prefaced with "We", the officer would have had information vital to the ongoing investigation. Presumably, our dissenting colleague would likewise suppress an incriminating response if the officer had asked, "Are you alone?", or, "Is anyone helping you inside the store?"

that at some point in time during the course of the arrest it could no longer be contended that the police were without opportunity to give the *Miranda* warning. We believe that *Miranda* does require the police to warn an arrested suspect of his rights as immediately as practicable after arresting him. . . .

However, that does not mean that on the facts of this case the first words uttered by the officer must have been a recitation of *Miranda* rights as he secured the accused's hands.[3] Common sense tells us otherwise. Interrogation forbidden by *Miranda* is not a single question at the threshold of the encounter arguably aimed at determining the nature of the situation confronting the police. *See* note 2, *supra.*

It is of some significance in our decision to note that the Court in *Miranda* was keenly aware of a body of jurisprudence at the time which applied a major part of the same rule there announced. The Court observed that its new ruling for civilian courts had been a part of military law for some time. 384 U.S. at 489, 86 S.Ct. 1602. Under the Uniform Code of Military Justice (1951), Art. 31 (10 U.S.C. § 831(b) (1970 ed.), a suspect, before questioning, must be advised of the nature of the accusation and that he need not make a statement, but that if he does it may be used against him in a trial by court-martial. Significantly, the United States Court of Military Appeals has ruled on facts essentially identical to those here that Article 31 warnings were not required. *See United States v. Vail,* 11 U.S.C.M.A. 134, 28 C.M. R. 358 (1960) (defendants apprehended making second trip from warehouse with stolen weapons and arresting officer asked one of them where the guns had been taken during the first sojourn moments before).

The dissenting view overlooks the proposition that the exclusionary rule is not always to be invoked in a reflexive manner. Due regard must be given to the policy to be served by suppression, the degree and nature of the confrontation, and the good faith of investigating officials, *Michigan v. Tucker,* 417 U.S. 433, 446–47, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), to the end that "when balancing the interests involved, we must weigh the strong interest under any system of justice of making available to the trier of fact all concededly relevant and trustworthy evidence which either party seeks to adduce." *Id.* at 450, 94 S.Ct. at 2367.

We, therefore, conclude that under the circumstances of this case, the accused's statement was not improperly received at trial as the product of forbidden police interrogation. The judgment of conviction is

Affirmed.

KERN, Associate Judge (concurring):

I am constrained to concur in the affirmance of the conviction solely upon the peculiar circumstances of this case which lead me to the conclusion that in-custody *interrogation,* as proscribed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), did not occur here. The persuasive factors, which taken all together guide me to my conclusion, are:

The officer's *sole* question of appellant, *viz.,* "What are you doing here?", when viewed in the context it was asked (late at night on a rooftop of a commercial establishment ringed by a 10' barbed wire fence in the front and a 6' wall in the rear and wired with a burglar alarm) may be construed as one of wonderment rather than accusation; and, appellant's instantaneous response, *viz.,* "Just getting tires, man", to

3. *Bosley* was decided on the grounds that simply informing the accused of the fact that a neighbor accused him of rape was not interrogation, and the court noted that there was no contention of "custodial interroga-

tion." *Id.* It would seem that such a statement by the police might be construed by an accused as implying the question, "What do you say about it?", but such was not argued in the case.

the single question addressed to him by the lone officer effecting the arrest seems more akin to a volunteered statement which *Miranda* (at 478, 86 S.Ct. 1602) deems admissible than an incriminatory statement wrung from an accused who is overborne by the inherently compelling atmosphere of in-custody *interrogation.*

I note that as soon as additional officers arrived on the scene they did interrogate[1] appellant, *i. e.,* pose a series of questions after giving the *Miranda* warning.

My reading of *Brewster v. United States,* D.C.App., 271 A.2d 409 (1970), cited in the dissent, is that the police there posed *a number of questions* to the defendant at the station house; his answer to one such question was received in evidence over his objection because the trial court concluded *Miranda* did not apply to "a routine question"; and, we rejected that reasoning since custodial *interrogation* had occurred, during which this "routine" question had been posed, and *Miranda* clearly applied. I deem the situation in the instant case to be quite different.

In sum, I cannot conclude that the one question asked reflexively by the single officer at the end of a swiftly-moving sequence of events occurring in the space of but several minutes constituted custodial interrogation which in the absence of the *Miranda* warning requires exclusion of the incriminating answer.[2] Hence, the trial court in my view ruled correctly, and the conviction should stand.

FICKLING, Associate Judge (dissenting):

In my view the issue is whether appellant's inculpatory statement should have

been ruled inadmissible since the statement was in response to a question asked by the arresting officer *after* an arrest had been effected but *before Miranda*[1] warnings were given.

The record supports the trial judge's finding that appellant was under arrest when the officer asked, "What are you doing here?" and appellant answered, "Just getting tires, man." Moreover, at the time the question was asked, the officer was handcuffing appellant in order to secure the arrest which had previously been accomplished when the officer, with drawn gun, had ordered the appellant to "hold it right there."

The majority are of the opinion that the question asked by the officer after appellant was under arrest and while being handcuffed did not constitute a "custodial interrogation" within the meaning of *Miranda.* I disagree.

The Supreme Court in *Miranda* stated:

By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . . [*Miranda, supra* at 444, 86 S.Ct. at 1612; footnote omitted.]

The meaning of the above language is crystal clear and I am compelled to conclude that the officer's question constituted a custodial interrogation. In the instant case, the officer asked "What are you doing here?" We said in *Brewster*[2] that the crucial factor is not the type or number of questions asked, but rather whether the questions were asked during a *custodial*

---

1. According to Merriam-Webster New International Dictionary (3d ed. 1969), the primary meanings of the word are:
   to question typically with formality, command, and thoroughness for full information and circumstantial detail . . . ;
   to ask questions about; to examine in detail . . . .

2. Our dissenting colleague suggests that the majority has engaged in factfinding in uphold-

ing the trial court's ruling. With all deference it seems to me we may properly review the record on appeal and characterize what we find there in reaching our conclusions.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *Brewster v. United States,* D.C.App., 271 A.2d 409, 412 (1970).

interrogation. Here the appellant had not only been arrested and taken into custody at the time of the question, but had been further deprived of his freedom in a significant way when the officer began handcuffing him. Therefore, this questioning in this context of almost total deprivation of freedom was clearly "custodial interrogation" within the meaning of *Miranda*. *Brown v. United States,* D.C.App., 278 A. 2d 462, 466 (1971).

The majority state that they "shy away from an easy, mechanical application of the black-letter words" of *Miranda*. I know of no reason (other than mere disagreement with the rule) why black-letter words which are clear and unambiguous should not apply to the facts of this case. The nature of our judicial system requires no less, even in the face of disagreement.

The majority emphasize the fact that the appellant "was caught in the very commission of a crime and it was during the contemporaneous securing of his hands that the officer asked the question." I fail to find the relevance of this observation. *Miranda* does not except from its coverage questions asked at the time of arrest. Such an exception, in fact, would completely nullify the *Miranda* rule. For instance, if a person is caught while committing a criminal act, a police officer prior to giving the *Miranda* warnings would be permitted to ask an arrestee, "Why did you do it?" and thereby secure a confession. There is no doubt that such a confession would be suppressed under *Miranda*, notwithstanding the fact that the question was asked contemporaneously with the arrest.

It also appears that the majority are engaged in fact-finding which is beyond the scope of our review power. D.C. Code 1973, § 17–305. They use such phrases as "the officer's question . . . may be construed as one of wonderment rather than accusation"; "question asked reflexively"; and "appellant's instantaneous response . . . more akin to a volunteered statement." Having thus characterized the officer's question as other than a question and appellant's response as other than a response, they conclude that "custodial interrogation" did not begin until additional officers arrived on the scene. However, the trial judge found and the record is clear that the officer asked a question and appellant responded to that question while in custody.

Further, the majority attempt to soften the impact of their opinion by stating that "the single inquiry was a part of the apprehension rather than an event separately orchestrated by the police to obtain evidence." I respond by saying that a rose by another name is a rose just the same. The "inquiry" was a question and the "apprehension" was an arrest.

The majority imply that *Miranda* was only intended to apply when one is held for interrogation, not when a person has been arrested during the commission of a crime or arrested on probable cause. Of course, such implication is clearly contrary to *Miranda*.[3]

For the foregoing reasons, I respectfully dissent.

3. The majority's reliance on *Michigan v. Tucker,* 417 U.S. 433, 446–47, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), is misplaced. There the issue was whether the testimony of a witness should have been suppressed because the identity of the witness was discovered during the custodial interrogation of the defendant, who was not given the complete *Miranda* warnings. The only missing element was that defendant was not told that counsel would be appointed if he was indigent. The Supreme Court held that the statements of the defendant were properly suppressed and the testimony of the witness was properly admitted into evidence. We have no such factual situation in the instant case.