Frederick T. **MILEY,** a/k/a Farid Salam, Appellant,

v.

**UNITED STATES, Appellee.**

No. 83–532.

District of Columbia Court of Appeals.

Argued April 3, 1984.

Decided May 24, 1984.

Michael Lawrence Spekter, Washington, D.C., appointed by the court, for appellant.

Daniel S. Seikaly, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Anthony L. Joseph, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR and ROGERS, Associate Judges, and GALLAGHER, Associate Judge, Retired.

PRYOR, Associate Judge:

Appellant was convicted of carrying a pistol without a license, D.C.Code § 22–3204 (1981), possession of an unregistered firearm, *id.* § 6–2311(a), and unlawful possession of ammunition, *id.* § 6–2361. A timely motion was filed seeking suppression of certain statements appellant made to a police officer before receiving warnings pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Following a hearing, the trial court denied the motion, concluding that the statements were not the product of custodial interrogation. Appellant now urges that admission of these statements at trial constituted reversible error.

According the trial court's factual findings the weight to which they are entitled, we conclude that the failure to suppress the statements was error, but harmless beyond a reasonable doubt.

A man was shot and killed in Northwest Washington on a summer evening in 1982. Officer Rohlfs, a uniformed member of the Metropolitan Police assigned to a marked vehicle, was summoned to the scene near midnight and informed by witnesses that the gunman was a tall, black man wearing a blue jogging suit, a hat and tennis shoes. At approximately 5:30 that morning, while patrolling in the vicinity of the shooting, Officer Rohlfs noticed a man standing on a

street corner, whose appearance and clothing matched that of the suspected gunman. The officer drove past the suspect, attempting to conceal his aroused suspicion, and turned the vehicle around a few blocks away. However, upon his return, the suspect had disappeared from view. Officer Rohlfs continued his exploration and within five minutes observed the suspect, later identified as appellant, crouched in the stairwell of a building attempting to conceal himself.

The officer exited his vehicle and, with his service revolver drawn, approached appellant and ordered him "to get up and come this way." When appellant complied, Officer Rohlfs noticed a pistol lying at the place in the stairwell where appellant had been hiding. The officer, revolver in hand, inquired if the pistol was registered in the District, and appellant responded that it was registered in North Carolina. When Rohlfs then asked why he carried the pistol, appellant responded that he needed it for protection. Appellant was then formally arrested and given the *Miranda* warnings.[1]

▮ Conceptually, it is settled that when a suspect is taken into custody and interrogated, he must be given specified warnings regarding the privilege against self-incrimination. *Miranda v. Arizona, supra,* 384 U.S. at 444, 86 S.Ct. at 1612; *Brewster v. United States,* 271 A.2d 409 (D.C.1970). In addressing questions that arise in this area, we necessarily pay particular attention to the meaning of the phrase "custodial interrogation." *See, e.g., District of Columbia v. M.E.H.,* 312 A.2d 561, 565–66 (D.C.1973); *Tyler v. United States,* 298 A.2d 224 (D.C. 1972). Similarly, it is recognized that pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer

is permitted to temporarily detain a citizen and undertake a routine, on-the-scene investigation, unaccompanied by *Miranda* warnings. *Miranda v. Arizona, supra,* 384 U.S. at 477–78, 86 S.Ct. at 1629–1630; *cf. United States v. Castellanos,* 731 F.2d 979 at 983 (D.C.Cir.1984) (as a matter of law, a request for identification cannot constitute a show of authority sufficient to convert an innocent encounter into a seizure). Given the diversity of street encounters between police officers and citizens, experience demonstrates that the reach of *Miranda* is sometimes blurred in circumstances involving a *Terry* encounter.

▮ Acknowledging that the parameters of the terms, "custody" and "arrest," may change with the context, we start with the generally accepted premise that custody is imposed once the investigating officer physically deprives the suspect of his freedom of action in any significant way or, under the circumstances, leads him to believe, as a reasonable person, that he is so deprived. *Miranda v. Arizona, supra,* 384 U.S. at 444, 86 S.Ct. at 1612; *United States v. Ward,* 438 A.2d 201, 204 (D.C.1981); *Calaway v. United States,* 408 A.2d 1220, 1224 (D.C.1979).[2]

▮ In this instance, we observe that once appellant obeyed the command to come forward and revealed the pistol, Officer Rohlfs had probable cause to effect an arrest; indeed, at that juncture, the evidence of appellant's guilt of a weapons crime was strong. *Id.* at 1225 (noting that the presence of probable cause to arrest is a circumstance to be considered in determining whether a suspect is in custody). Confronted with the obvious evidence of guilt, appellant could reasonably have assumed that he would not be allowed to leave.[3] Moreover, in drawing his weapon,

---

**1.** A subsequent examination revealed that the pistol was operable and loaded with live ammunition.

**2.** In concluding that appellant's statements were not the product of custodial interrogation, the trial judge's findings did not make clear whether he considered if, under the circumstances,

appellant would have reasonably believed that his freedom of action had been significantly restrained. Our cases, cited above, demonstrate that this is a crucial determination.

**3.** *See People v. P.,* 21 N.Y.2d 1, 233 N.E.2d 255, 286 N.Y.S.2d 225 (1967) (defendant would not reasonably have believed he was in custody

Officer Rohlfs asserted his authority over appellant and gave a clear indication that the confrontation had escalated beyond a general investigation. *People v. Shivers,* 21 N.Y.2d 118, 233 N.E.2d 836, 286 N.Y. S.2d 827 (1967) (a suspect detained at gunpoint is in custody; *State v. Intogna,* 101 Ariz. 275, 419 P.2d 59 (1966) (en banc) (same). *See Irby v. United States,* 342 A.2d 33, 37 (D.C.1975) ("[a]ppellants were effectively under arrest when they were ordered from the car at gunpoint with probable cause") (footnote omitted).

We do not suggest that Officer Rohlfs was unjustified in drawing his weapon. To the contrary, his actions were those of an experienced officer confronting a suspected gunman. Rather, we simply conclude, regarding the question at issue—whether appellant was in custody—that viewing the circumstances objectively, appellant's movement was sufficiently curtailed that he could reasonably believe he was not free to leave.[4]

The government maintains that while appellant may have been in custody, the officer's questions did not constitute interrogation, but were permissible on-the-scene inquiries. We do not agree.

■ In determining whether custodial questioning constitutes interrogation, a significant factor is whether, under the circumstances, the officer should recognize that his questions are "reasonably likely to elicit an incriminating response[5] from the suspect." *Rhode Island v. Innis, supra,*

446 U.S. at 301, 100 S.Ct. at 1689–1690; *United States v. Booth,* 669 F.2d 1231, 1237 (9th Cir.1981). *Cf. White v. United States,* 222 A.2d 843, 845 (D.C.1966) (finding no custodial interrogation where the officer's questions "may well result in exculpation"). It is generally true that probing, accusatory questions going to the heart of the offense under investigation are more likely to elicit incriminating responses than routine inquiries into an individual's background.[6]

In a close case, *Owens v. United States,* 340 A.2d 821 (D.C.1975), we held that an officer's question, "What were you doing there?" asked of a suspect whom the officer had detained at gunpoint under unusual circumstances, was not interrogation. We found that the single question was equally capable of eliciting revelation of whether the suspect had been accompanied by others who may have endangered the lone officer's safety, *id.* at 823 & n. 2, and noted that the question was asked reflexively in a context of wonderment, *id.* at 825–26 (concurring opinion). We observe that in the present case, Officer Rohlfs' questions reveal no concern for his own safety and were not in the nature of a reflex reaction.

■ With the evidence of appellant's guilt in plain view, the officer's decision to pose probing questions was crucial. Having asked whether the pistol was registered, which would in no way serve as an excuse for having it on the street,[7] the

---

where he had not yet been confronted with the information that his accomplice had confessed).

**4.** The Supreme Court has compared the relatively relaxed atmosphere of on-the-scene questioning with that accompanying a warrantless search supported by consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 231–32, 247, 93 S.Ct. 2041, 2049–2050, 2058, 36 L.Ed.2d 854 (1973). Yet even this line of Fourth Amendment cases recognizes that consent obtained at gunpoint may be suspect. *See, e.g., Judd v. United States,* 89 U.S.App.D.C. 64, 65–66, 190 F.2d 649, 650–51 (1951); *Gatlin v. United States,* 117 U.S.App.D.C. 123, 130, 326 F.2d 666, 672 (1963).

**5.** An incriminating response is "any response whether inculpatory or exculpatory—that the

prosecution may seek to introduce at trial." *Rhode Island v. Innis,* 446 U.S. 291, 301 n. 5, 100 S.Ct. 1682, 1690 n. 5, 64 L.Ed.2d 297 (1980) (emphasis in original); *Brewster v. United States, supra,* 271 A.2d at 412.

**6.** We recognize that in certain circumstances, even routine background questions will be reasonably likely to elicit an incriminating response. *United States v. Hinckley,* 217 U.S.App. D.C. 262, 271–72, 672 F.2d 115, 124–25 (1982) (suspect particularly susceptible to self-incrimination).

**7.** We have recently reiterated that a pistol may be carried lawfully outside the home or business in only very limited situations. *Gaulmon*

officer pressed the inquiry, asking appellant his purpose in carrying the pistol. We conclude, within the meaning of *Miranda,* that these questions were not likely to elicit a credible, innocent explanation, and went well beyond the general exploratory inquiries associated with an investigatory stop.

We hold that appellant faced significant restraints, and would reasonably have concluded that he was no longer free. His statements were the product of interrogation conducted without *Miranda* warnings required by his custodial status, and should have been suppressed.

 The error here was of constitutional dimension. Nevertheless, reversal of the conviction is uncalled for where the evidence against the accused was overwhelming, and the reviewing court is able to conclude that the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Brooks v. United States,* 367 A.2d 1297 (D.C.1976).

 The only issue in the case was appellant's knowing possession of the pistol. It was the government's burden to prove that the pistol was conveniently accessible to appellant and that he knew of its presence. *Waterstaat v. United States,* 252 A.2d 507 (D.C.1969). Officer Rohlfs' uncontradicted testimony demonstrated that he observed the pistol at the precise spot in the stairwell where appellant had been hiding. The only rational inference the trier could draw was that appellant either sat on, or crouched over, the pistol. In this context, appellant's improperly admitted statements were cumulative and harmless beyond a reasonable doubt. *Montgomery v. United States,* 268 A.2d 271, 272–73

*v. United States,* 465 A.2d 847, 851 n. 4 (D.C. 1983); *see* D.C.Code §§ 22–3206, –3205.

**8.** Appellant further alleges as error the trial court's denial of his Jencks Act, 18 U.S.C. § 3500, request for a transcript of a radio "look out" describing the suspected gunman that was broadcast by Officer Rohlfs shortly after the homicide.

(D.C.1970) (erroneous admission of statements resulting from custodial interrogation was harmless beyond a reasonable doubt); *Cummings v. State,* 27 Md.App. 361, 387 n. 6, 341 A.2d 294, 310 n. 6 (1975); *see generally Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (*Miranda* violation harmless beyond a reasonable doubt).[8]

The judgment of the trial court is hereby *Affirmed.*

The government concedes, and we agree, that the trial court erred in denying appellant's request. However, in our view, the facts contained in the transcript pertained primarily to information supporting the officer's probable cause to arrest. Since this question was not a major consideration in the jury's determination of guilt or innocence, we do not think the error had a significant impact upon the outcome of the trial.