**James A. SMITH, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–195.**

District of Columbia Court of Appeals.

Submitted Jan. 17, 1991.
Decided Jan. 22, 1991.*

David Carey Woll, appointed by this court, was on the brief, Washington, D.C., for appellant.

Jay B. Stephens, U.S. Atty., John R. Fisher, Roy W. McLeese III, Wyneva Johnson, and Barry Wiegand, Asst. U.S. Attys., were on the brief, for appellee.

Before BELSON and FARRELL, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM.

This appeal from appellant's convictions for introducing contraband, a pistol, into a penal institution in violation of D.C.Code § 22–2603 (1989), and related weapon offenses, challenges only the admission into evidence of a statement by appellant which he contends was the product of custodial interrogation and obtained without provision of *Miranda* ** warnings. We affirm.

---

* The disposition in this case was originally issued as a Memorandum Opinion and Judgment on January 22, 1991, and is being published upon the court's grant of appellee's motion to publish.

** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

I.

Appellant, an inmate at the Community Correction Center Number One at 1010 North Capitol Street, N.W., returned to the Center from work at about 8:45 p.m. on July 8, 1989. As he entered the office of Zion Beard, a correctional counselor, to sign in, Beard saw that he was carrying two packages, one a plastic bag and the other a shoe box. After signing in, appellant picked up the shoe box and left the office; Beard called to him to come back so the counselor could "check his property." Appellant returned to the office but had only the plastic bag in his possession, not the shoe box. Beard searched the bag and, finding nothing unusual, allowed appellant to leave. He was suspicious, however, and followed appellant down the hall, where he saw the shoe box on the floor of a bathroom. He and appellant both grabbed for the box, a "tussle" ensued, and Beard took possession of it. The two men returned to the office where appellant grabbed the box again and Beard again took it from him; he opened the box and saw that it contained a handgun, ammunition, and a clip. Beard exclaimed, "Man, are you crazy. You got a gun in here. What the hell are you doing with a gun in here?" Appellant answered, "I need it to protect myself."

The government introduced appellant's statement in its case-in-chief after the court denied his motion to suppress it on *Miranda* grounds. In denying the motion the court stated, *inter alia*:

> I don't think we need to talk about custody. We need to talk about interrogation. He says, "Man, are you crazy? What in the hell are you doing with a gun in here?" ... I don't think he was being interrogated. I think ... that was much more the product of a very normal reaction, rather than interro[gation]....
>
> ... I don't see any grounds ... for the Court to suppress the statement. I give you your custody. I think the guy's in custody because he's living in a halfway house, but he's not in police custody and he's not being interrogated, and so *Miranda* doesn't apply....I'm going to rule the statement admissible.

II.

Although appellant was in "custody" in a broad sense at the time of his statement by virtue of his incarceration in a halfway house, there is substantial authority holding that an inmate is not "in custody" for *Miranda* purposes merely because of his status as a prisoner. *E.g., United States v. Conley*, 779 F.2d 970, 972–73 (4th Cir. 1985), *cert. denied*, 479 U.S. 830, 107 S.Ct. 114, 93 L.Ed.2d 61 (1986); *Leviston v. Black*, 843 F.2d 302, 304 (8th Cir.), *cert. denied*, 488 U.S. 865, 109 S.Ct. 168, 102 L.Ed.2d 138 (1988); *Cervantes v. Walker*, 589 F.2d 424, 428 (9th Cir.1978). Nevertheless, it is unnecessary for us to decide that issue or the related one of whether, when Beard escorted appellant back to the office with the shoe box, he imposed additional restrictions on appellant's freedom of movement sufficient to yield "custody" even under the cases cited above. *E.g., Cervantes*, 589 F.2d at 428. Assuming that appellant made the incriminating statement while in custody within the meaning of *Miranda,* we reject his contention that the statement was the product of "interrogation."

Interrogation is "express questioning or its functional equivalent" designed to "elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). In *Miley v. United States*, 477 A.2d 720 (D.C. 1984), on which appellant principally relies, we began by noting that, in general, "*probing, accusatory* questions going to the heart of the offense under investigation are more likely to elicit incriminating responses than routine inquiries into an individual's background." *Id.* at 723 (emphasis added). Beard's instinctive question to appellant, "What the hell are you doing with a gun in here," to be sure, was not a routine inquiry into appellant's background, but neither was it "probing" and "accusatory." In *Miley* we endorsed the distinction between questioning of the latter kind intended to elicit inculpatory information and a "question ... asked reflexively in a context of wonderment." *Id.,* citing

*Owens v. United States,* 340 A.2d 821, 825 (D.C.1975) (concurring opinion); *see also Hairston v. United States,* 500 A.2d 994, 997 n. 6 (D.C.1985) (officer's question "what happened" was "reflexive and designed only to aid him in his initial evaluation of the scene"). Beard's question—more in the nature of an exclamation than a question—was a reflex reaction to his discovery of a gun inside the box which appellant had just brought into the halfway house.

In *Spann v. United States,* 551 A.2d 1347 (D.C.1988), this court canvassed a number of our decisions involving the issue whether a statement was made in response to police interrogation, and concluded that the police' conduct in *Spann* "simply cannot be compared to the intentionally coercive tactics which this court has disapproved in prior cases." *Id.* at 1350. That holding applies foursquare to the conduct of Beard—a correctional counselor not charged with investigating crime—who asked a single, almost rhetorical and certainly unpremeditated, question at the very instant he discovered the gun. Assuming the question even rose to the level of an initial "on-the-scene investigation," which *Miranda* does not reach, this case remains quite unlike *Miley* in which the police officer "asserted his authority over appellant and gave a clear indication that the confrontation had escalated beyond a general investigation." 477 A.2d at 722–23. As in *Owens,* we regard appellant's "instantaneous response" as "more akin to a volunteered statement which *Miranda* deems admissible than an incriminatory statement wrung from an accused [whose will] is overborne." 340 A.2d at 825 (concurring opinion).

Accordingly, the judgment of the Superior Court is

*Affirmed.*